## A96A0461. CHATTAHOOCHEE CHASE CONDOMINIUM ASSOCIATION, INC. v. RUBEN.
### (472 SE2d 520)

BLACKBURN, Judge.

Chattahoochee Chase Condominium Association, Inc. (the "Association") appeals the trial court's order granting summary judgment on the issue of James Ruben, Jr.'s, liability for unpaid association assessments.

On September 16, 1987, Ruben sold at least 99 percent of his interest in the condominium at issue to Francine Sparacino. At the time of the sale, Sparacino had not yet obtained financing to purchase the property. Therefore, Rubin agreed to accommodate Sparacino by allowing her to assume his mortgage until she was able to obtain financing. Because a due on sale clause would have been triggered if Ruben conveyed his entire interest in the property, Ruben delivered two deeds to Sparacino: the first, for ninety-nine percent, was immediately recorded; the second, for the remaining one percent, was to be recorded when Sparacino obtained her own financing. Sparacino never obtained financing, and the deed conveying the remaining one percent interest was never recorded. Thus, Rubin retained a one percent record title interest in the property.

During the period that Sparacino owned at least 99 percent of the property and enjoyed 100 percent of the benefits of ownership, the unit's assessments went unpaid. The Association filed a complaint against both Sparacino and Ruben as record title holders. Although the Association obtained a final judgment against Sparacino, the Association has been unable to locate or collect from her. Thus, the Association is seeking to recover all outstanding assessments and related charges from Ruben.

Ruben filed a summary judgment motion on the issue of his liability. The motion set forth two theories: first, that Ruben, as a mortgagor, was not an "owner" of the property; second, that even if Ruben is a co-owner of the property, he is only liable for any unpaid assessments to the extent of his co-ownership (i.e., one percent). The trial court granted partial summary judgment in favor of Ruben stating that "[Ruben] is not liable for any sum in excess of 1% of the assessments."

1. In its first enumeration of error, the Association alleges that the trial court erred in holding that, even if Ruben is a co-owner of

the property, he is only liable to the extent of his co-ownership interest.[1]

Article VII, Section 2, of the Association's by-laws provides: "Each owner shall be liable for his or her portion of each assessment coming due while he or she is the owner of a unit." The issue that must be resolved is whether this language should be interpreted such that co-owners are liable for a unit's assessment only to the extent of their individual ownership interest, or whether it allows for joint and several liability between co-owners.

"There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction; if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity." (Citations and punctuation omitted.) *Gram Corp. v. Wilkinson*, 210 Ga. App. 680, 681 (437 SE2d 341) (1993); see also *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (430 SE2d 858) (1993) (applying this rule to real estate covenants). We agree with the trial court that the language in the by-laws in isolation is ambiguous. Therefore, the rules of construction must be applied.

OCGA § 13-2-2 (4) provides that the whole contract should be looked to in arriving at the construction of any one part. This means that a contract must be examined in its entirety, and not merely by examining isolated clauses and provisions. *Duffett*, supra at 486. Moreover, parties are presumed to have acted with knowledge of the applicable law. *Davenport v. Nance*, 194 Ga. App. 313, 314 (390 SE2d 281) (1990). The applicable law in the instant case would include the Georgia Condominium Act found at OCGA § 44-3-70 et seq., which was expressly referenced in the Association's Declaration and by-laws.

Paragraph 6 of the Association's Declaration provides: "The Association shall have the power to impose assessments which shall be apportioned among the owners in accordance with the percentage interest in the common elements appurtenant to each unit." In addition, the Association's Declaration and by-laws define "owner" as "the record title holder of a unit within the condominium, but shall not mean a mortgage holder." This definition does not distinguish between co-owners. Moreover, the Georgia Condominium Act defines a "unit owner" as *one or more persons . . .* who own a condominium unit." (Emphasis supplied.) OCGA § 44-3-71 (29). Thus, under the Georgia Condominium Act the term "unit owner" specifically

---

[1] Because the trial court did not definitively rule on the issue of whether Ruben was a co-owner of the property during the period in question under the terms of the Association's by-laws due to his alleged mortgagor status, the merits of that issue will not be addressed.

includes all co-owners collectively, even when the term is used singularly. "[W]ords of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning." OCGA § 13-2-2 (2).

After examining the Association's Declaration and by-laws in their entirety in conjunction with the Georgia Condominium Act, we believe that the language "[e]ach owner shall be liable for his or her portion of each assessment coming due while he or she is the owner of a unit" is unambiguous. It means that the collective owners of a condominium unit are liable for the unit's portion of the total assessment levied by the Association on all units. It does not mean that co-owners are liable for a unit's assessment only to the extent of their individual ownership. As a result, the by-laws do not preclude Ruben from being jointly and severally liable for all assessments and related charges levied on the unit while he was a co-owner.

This interpretation of the by-laws is consistent with public policy, the purpose of the Georgia Condominium Act, and any reasonable expectation that Ruben may have had when he bought the condominium unit in question. The Georgia Condominium Act explicitly provides "[n]o unit owner . . . shall be exempted from *any* liability for *any* assessment under this Code section or under any condominium instrument for *any reason whatsoever*. (Emphasis supplied.) OCGA § 44-3-80 (d). "The language [of the Act] is plain and susceptible of only one interpretation insofar as it relates to the defenses. There is no legal justification for a condominium owner to fail to pay valid condominium assessments. This reflects a clear choice by the legislature that the owner's obligation to pay assessments be absolute. . . . The public policy expressed in the statute assures that fulfillment of obligations and the functioning of a condominium association as a whole not be jeopardized or compromised." (Citation omitted.) *Forest Villas Condo. Assn. v. Camerio*, 205 Ga. App. 617, 618-619 (422 SE2d 884) (1992); see also *Casey v. North Decatur Courtyards Condo. Assn.*, 213 Ga. App. 190, 191 (444 SE2d 361) (1994) (public policy requires that condominium associations have sufficient power to enforce the collection of assessments). This public policy would be thwarted if we failed to recognize that co-owners are jointly and severally liable for condominium association assessments absent any language to the contrary. Therefore, we hold that the trial court erred in limiting Ruben's liability to one percent of the unpaid assessments.

2. Our decision in Division 1 makes it unnecessary to consider the remaining enumeration of error.

*Judgment reversed. Birdsong, P. J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur because of the context in which the sentence quoted from Article VII of the by-laws appears. That article addresses the subject of assessments. The sentence the meaning of which is at issue is part of Section 2. It states: "Each owner of any unit by acceptance of a Deed therefor, whether or not it shall be so expressed in such Deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges, (2) special assessments, such assessments to be established and collected, as hereinafter provided, and (3) specific assessments against any particular unit which are established pursuant to the terms of these By-Laws. All such assessments, together with charges, interest, costs, and reasonable attorneys' fees, in the maximum amount permitted by Section 41 of the Georgia Condominium Act, shall be a charge on the unit and shall be a continuing lien upon the unit against which each assessment is made. Such amounts shall also be the personal obligation of the person who was the owner of such unit at the time when the assessment fell due. Each owner shall be liable for his or her portion of each assessment coming due while he or she is the owner of a unit and his or her grantee shall be jointly and severally liable for such portion thereof as may be due and payable at the time of conveyance. Assessments shall be paid in such manner and on such dates as may be fixed by the Board of Directors; unless otherwise provided, the assessments shall be paid in monthly installments."

This, and the next section regarding acceleration, make plain that it is contemplated that assessments will not always be due all at once, on one date, but that they will be spread out over a period of time so as not to be onerous. So whoever is the owner, or whoever are the owners, at the time the installment is due is (or are) obligated for it, and in this case there were two owners simultaneously, each owning a partial interest. "Portion" refers to installment, not to percentage of ownership. A grantee is liable jointly and severally with the grantor-owner if an installment is due at the time of conveyance.

An applicable rule of construction is that " '[t]he language used by the parties is of primary consideration in ascertaining their intention.' [Cits.]" *F & F Copiers v. Kroger Co.*, 194 Ga. App. 737, 739 (1) (391 SE2d 711) (1990). There is no wording indicating that the Association must determine the percentage of ownership in each unit which multiple owners have and invoice them accordingly. On the other hand, Section 2 commences: *"Each* owner" covenants and agrees to pay the assessments. The Georgia Condominium Act addresses assessment and collection on a unit basis, not on an individual basis. OCGA §§ 44-3-80; 44-3-109.

Moreover, defendant Ruben presented no evidence that when he conveyed 99 percent of the title to Sparacino, or at any time during

the period when the assessments were being made, he advised the Association that he was liable for only one percent. "The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3. See *F & F Copiers*, supra. Thus he did not demonstrate an intention contrary to that espoused by the Association, either by a consideration of the entire contract or by his own actions.

DECIDED JUNE 17, 1996.

*Weissman, Nowack, Curry & Zaleon, Jamie A. Lyons, Leigh M. Wilco*, for appellant.

*The Wilson Law Firm, L. Matt Wilson, J. Phillip London, Jr.*, for appellee.