BASS CANNING COMPANY *v.* MacDOUGALD CONSTRUCTION COMPANY.

BASS CANNING COMPANY *v.* MAYOR AND ALDERMEN OF MILLEDGEVILLE.

Nos. 8299, 8300. JANUARY 14, 1932.

ADHERED TO ON REHEARING, FEBRUARY 27, 1932.

*Frank W. Bell* and *Sam H. Wiley,* for plaintiff.

*Hines & Carpenter, Spalding, MacDougald & Sibley,* and *Sibley & Sibley,* for defendants.

BECK, P. J. This suit was against the City of Milledgeville and a construction company, for damage to personal property of the plaintiff in its warehouse, resulting from the inundation of the ground floor of the building by surface-water from the streets. It was alleged: that between the street and the sidewalk there had been a surface-drain ditch, which drained into a perpendicular sewer; that in 1928 the city contracted with the construction company to pave the street in question, and construct necessary storm-sewers, catch-basins, and manholes in accordance with plans furnished by the city; that the construction company did such construction work in accordance with the plans adopted by the city, and in so doing built up the sewer into which the surface-water from the street had theretofore drained, so as to raise the mouth of the sewer about four feet, converting the open perpendicular drain sewer into a closed manhole, and leaving no opening into which the surface-water accumulating on the street could drain.

It was alleged that the plaintiff protested to the construction company's foreman and the city's engineer as to the manner of constructing the sewer, and they promised to correct the defect so as to make provision for draining the surface-water, but failed to do so, and that thereafter a hard rain caused surface-water to overflow the sidewalk and run into plaintiff's building, resulting in the damages sought to be recovered. The petition was in three counts. Count one alleged that the diversion of the surface-water and causing it to pond in the storage room of plaintiff by closing the drain sewer constituted a nuisance; the second count alleged that the defendants were negligent in raising the height of the perpendicular sewer into which the surface-water had theretofore drained, without providing openings in the added portion sufficient to allow the water accumulating in the drain ditch to escape through the sewer; the third count sought a recovery on the theory that the acts of the defendants amounted to a taking and damaging of private property for public purposes, without just and adequate compensation. The court sustained a demurrer to the third count, and overruled separate demurrers interposed by the city and the construction company to the first and second counts, and the defendants excepted, in separate bills of exceptions, to the rulings on the first and second counts.

The foregoing statement is taken from the report of the decision by the Court of Appeals. But we can not concur in the judgment of the Court of Appeals reversing the judgment of the court below, overruling the demurrers to the first and second counts of the petition. Under previous decisions by this court, it seems to us that the trial court correctly held that the petition of the plaintiffs set forth a cause of action. There are several decisions which have been rendered by this court, under which the trial judge was correct in his holding as to the first and second counts. In the case of *Reid* v. *Atlanta,* 73 *Ga.* 523, the statement of facts was as follows: "On May 16, 1882, Mary A. Reid brought case against the City of Atlanta. The declaration alleged that the city had negligently kept, worked, and graded Hunter street so as to turn water upon the lot where she resided, causing it to wash, and producing stagnant and filthy puddles, endangering health, etc. By amendment, it was alleged that, in 1870, the city changed the sewer on Hunter street from its original and natural

position to a new situation so negligently as to discharge water where it would flow directly across plaintiff's lot; that the original work was unskillful and wrong; and that it had been a continuing nuisance and had been greatly increased by changes in the grade of the street within four years prior to the bringing of the suit; also that, within that time, human excrement had begun to be discharged upon plaintiff's lot from the sewer. Damages for the four preceding years were claimed; also for the permanent injury to the lot." And in that case this court held: "Every continuance of a nuisance is a renewal of wrong, and therefore actionable until abated. 3 Blackstone, 220; 7 Ga. 327; 47 Id. 266, 267. Surely it is a nuisance to keep up a sewer which, when it rains, throws upon one's lot, and near the house where she resides, too, excrement, disagreeable in smell and hurtful to health. We are constrained, therefore, to rule that the court erred in dismissing the plaintiff's action."

In another decision rendered subsequently, this court adhered to the ruling in the *Reid* case, holding: "It is contended, that, as the city had the right to establish a system of 'grading and drainage' by its charter, it is not liable for damages done to private citizens if the same was done skilfully. With this view we do not concur. The grading and drainage must be done so that the same will not prove a nuisance to the citizens, impairing the health of families and producing noxious scents, thereby rendering the enjoyment of their property impossible. If it be so done, the city will be liable for damages." *Smith* v. *Atlanta*, 75 Ga. 110. It was further said, in the *Smith* case: "This sewer was and is under the control of the city; if it be a nuisance and the city has not abated it, no one else could; not having abated it, the city may be said to have maintained it and kept it up, and it is thereby a continuing nuisance, for the maintenance of which the city is liable." In *Butler* v. *Thomasville*, 74 Ga. 570, we find the following: "When a municipal corporation is proceeding to lay sewers and discharge filthy sewage upon the land of a property owner, which may probably cause injury to his health and sickness to his family, and where the nuisance is continuing and likely to be permanent, and the consequences are not barely possible but to a reasonable degree certain, a court of equity may interfere to arrest such nuisance before it is completed. . . If a nuisance

causes special damage to an individual, in which the public do not participate, such special damage gives a right of action; and as an action may be brought for every day the nuisance continues, equity, which abhors a multiplicity of suits, will entertain jurisdiction, so as to do full and complete justice between the parties, and terminate the litigation." So in *Holmes* v. *Atlanta*, 113 *Ga.* 961 (39 S. E. 458) : "A general grant of power to grade streets and to establish in connection therewith a system of drainage does not carry with it any right on the part of a municipality to create and maintain a nuisance, by causing surface-water polluted by filth and laden with noxious odors to be discharged upon the premises of a private citizen; and he may, when such a thing has been done, maintain against the city an action to recover the damages he has in consequence sustained."

From the statement of facts in *Mayor &c. of Waycross* v. *Houk,* 113 *Ga.* 963 (39 S. E. 577), it appears that the plaintiff, Mrs. Houk, filed an equitable petition against the Sanitary and Waterworks Commissioners of the City of Waycross and the Mayor and Council of that city, the main purpose of which was to enjoin the defendants from continuing the location of the mouth of the main sewer of the city at a designated point near her premises, or from extending it, as was contemplated, so that the sewage would be discharged directly upon her land. In this connection she alleged that the main sewer emptied into a small stream, within about six hundred feet of her premises, which was wholly incapable of carrying off the vast quantity of sewage discharged into it, and as a result the atmosphere of the neighborhood was permeated with "noxious gases, noisome odors, pestilential stenches, poisonous vapors," etc., which were dangerous to health and caused sickness among her tenants. She further alleged that her damages would be irreparable if this state of affairs were permitted to continue, or matters were made worse by the proposed extension of the sewer and the discharge of its filth into a ditch which ran for half a mile through her lands. And this court held that under the facts alleged the plaintiff was entitled to the equitable relief sought. Among the other cases cited in the *Houk* case was *City of Atlanta* v. *Warnock*, 91 *Ga.* 210 (18 S. E. 135, 23 L. R. A. 301, 44 Am. St. R. 17), where this court decided that there was no abuse of discretion in

granting a temporary injunction enjoining the city from continuing to maintain a nuisance already created. The nuisance complained of consisted of openings called manholes in a sewer located in a public street contiguous to a dwelling of a citizen, the manholes being allowed to emit poisonous gases in large quantities through perforated covers placed over them. And in the decision in the *Houk* case, commenting upon the case last referred to, it was said: "A general grant of power to establish in a city a sewerage system does not carry with it any right on the part of a municipality to create and maintain a nuisance dangerous to life or health." In *Massengale* v. *Atlanta*, 113 *Ga.* 966 (39 S. E. 578), this court held: "Permitting a public city sewer to be or remain in such a defective condition as to become a nuisance with resulting injury to realty gives a cause of action against the municipality in favor of the owner of such realty, and on the trial thereof he may recover for all damages to his property which have occurred within four years of the filing of his petition. This is so without regard to the time when the sewer was constructed or when it became in fact a nuisance. *Reid* v. *Atlanta*, 73 *Ga.* 525, and cit.; *Smith* v. *Atlanta*, 75 *Ga.* 110; *Maguire* v. *Cartersville*, 76 *Ga.* 84; *Mayor of Brunswick* v. *Tucker*, 103 *Ga.* 233; *Holmes* v. *Atlanta*, ante, 961; *Mayor of Waycross* v. *Houk*, ante, 963." See also *Langley* v. *Augusta*, 118 *Ga.* 590 (45 S. E. 486, 98 Am. St. R. 133), where a similar doctrine is laid down. A large number of other cases might be cited where the doctrine is emphatically restated.

We think that while it is true, as a general principle, that a municipality may select places for the construction of sewerage and drainage and adopt a plan for such construction, without rendering the city liable in damages for injury resulting from such selection and from the proper construction of the system, this general rule is subject to some limitations. No other conclusion can be reached by us, in view of the decisions which we have cited and from which we have made copious extracts. Outside decisions supporting what is said above, and doctrines along the same line, are to be found in text-books. In 19 R. C. L., 1091, under the title "Municipal Corporations," we find this doctrine stated: "It is generally held that a municipal corporation is not liable for injuries to person or property resulting from

the adoption of an improper plan for a public improvement, at least where the defects in such plan are due to a mere error of judgment. This doctrine is, however, of limited application. It it doubtless the law that a municipal corporation is not responsible for injuries which it did not cause and with respect to which it would incur no liability if it took no action whatever, merely because the structure which it erected for the purpose of relieving the difficulty was not of such great service as it would have been if it had been designed with better judgment. It is, however, certainly not the law that a municipal corporation can escape liability for the infringement of the private rights of individuals or for a breach of its positive duties by showing that such infringement or breach was the result of the plan adopted by the municipal authorities. If, for example, the construction of a public work results in the unauthorized invasion of adjacent property by earth, sewage, water, or other matter, from which it had previously been immune, proof that such invasion was the necessary result of the plan adopted by the municipal authorities insures, rather than avoids, the liability of the corporation." And we are of the opinion that the doctrine there stated is in accord with the Georgia rulings upon the subject. The Court of Appeals in *Lewis* v. *Moultrie, 27 Ga. App.* 757 (110 S. E. 625), held as follows: "While the maintenance by a city of a sewerage-drainage system is connected with the preservation of the public health, and therefore is a governmental function, and while ordinarily a city can not be held liable for damage to person or property caused by negligence of any of the city's servants while engaged in such work *(City Council of Augusta* v. *Cleveland,* 148 *Ga.* 734, 98 S. E. 345, and citations), or by an error of judgment on the part of its authorities in adopting a general plan of drainage and in determining when, where, and of what size, and at what level, drains or sewers shall be located *(Harrison Co.* v. *City of Atlanta, 26 Ga. App.* 727, 107 S. E. 83), yet where such negligence or error of judgment results in the creation and maintenance by the city of a nuisance permanent in its character and dangerous to life and health, and where the effect of the nuisance is specially injurious to an individual by reason of its proximity to his home, he is entitled to recover adequate compensation for his injuries, including damages for

any decrease in the market value of his realty." Applying the doctrine laid down in the cases cited above, the trial court was right in overruling the demurrer to the first and second counts of the petition, and the Court of Appeals erred in reversing that judgment.

If the city was liable because of the wrong and tort it did, the MacDougald Construction Company was also necessarily liable as a joint tort-feasor. The adoption of the faulty plan would have caused no damage. It was the carrying of that plan into execution that caused the damage complained of. The fact that the construction company was an independent contractor, as insisted, affords no reason why it should not be held responsible as a joint tort-feasor. The judgment of the Court of Appeals must therefore be reversed.

What is said above expresses the views of the majority of the court, and embodies the ruling of the court. While I have written this opinion, I can not concur in the conclusion reached. After careful consideration of the question I am of the opinion that the decision by the Court of Appeals is correct and sets forth the right views and doctrine.

*Judgments reversed. All the Justices concur, except Beck, P. J., and Gilbert, J., who dissent.*