[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 27, 2003
THOMAS K. KAHN
CLERK

No. 02-12261
_____

D. C. Docket No. 98-00223-CV-4-BAE

CSX TRANSPORTATION, INC.,
NATIONAL RAILROAD PASSENGER CORPORATION,

Plaintiffs-Cross-Defendants-
Appellants,

versus

THE CITY OF GARDEN CITY,

Defendant-Third-Party
Plaintiff-Appellee,

versus

ARCO INC.,

Third-Party Defendant-Cross-
Claimant-Appellee.

Appeal from the United States District Court
for the Southern District of Georgia
_____

**(March 27, 2003)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

BIRCH, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO O.C.G.A. § 15-2-9. TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

In this case we must determine under what circumstances, if any, a Georgia municipality may contractually indemnify a private party for loss, damage, or liability arising in connection with a public works project involving the private party's land. The district court granted summary judgment in favor of a municipality that had entered into such an agreement on the ground that it was ultra vires. Because the resolution of this appeal turns on questions of first impression under Georgia law, we certify it to the Supreme Court of Georgia for review. Questions CERTIFIED.

# I. BACKGROUND

The facts of this case, which are not in dispute, were succinctly stated in our earlier opinion, CSX Transp., Inc. v. City of Garden City, 235 F.3d 1325, 1326 (11th Cir. 2000) ("CSX I"):

> In 1996, the City of Garden City, Georgia (Garden City or the City) decided to install water and sewer lines along the public rights-of-way that ran across, under, and parallel to CSX Transportation, Inc.'s (CSX) railroad tracks. The City contracted with CSX to use CSX's rights-of-ways and agreed to indemnify CSX for any damages arising out of the City's use of the rights-of-way. Under the contract, the City agreed to maintain insurance to cover the indemnity obligations it had assumed.
>
> Garden City employed ARCO, Inc. as the general contractor for this project which employed CARLCO Trucking, Inc. as a sub-contractor. On October 9, 1997, a CARLCO employee drove a tractor-trailer truck to the City's work site to remove equipment. As he crossed CSX's tracks, his truck stalled on the tracks where it was hit by a National Railroad Passenger Corporation (Amtrak) passenger train. CSX paid damages to passengers on the train and sued Garden City for indemnification under their agreement. Garden City filed a third-party claim against its contractor, ARCO.

The City moved for summary judgment, claiming that the indemnity agreement was void for a number of reasons. The district court granted the motion, concluding that the agreement constituted an impermissible waiver of the City's sovereign immunity in the absence of any evidence that the City had liability insurance that would cover the indemnity claim. Id. at 1329. On appeal, CSX[1]

---

[1] For convenience, we refer to Appellants CSX and Amtrak as "CSX."

3

moved to supplement the record "to show that Garden City participates in the Georgia Interlocal Risk Management Agency (GIRMA) fund." Id. at 1330. We observed that the indemnification agreement, "in effect, required the City to waive its sovereign immunity vis-a-vis CSX in connection with any claims against CSX arising out of the City's construction project," id. at 1329, but that "Georgia law . . . forbids a city from waiving its sovereign immunity unless it has insurance to fund any liability it might thereby incur." Id. Relying on our "inherent equitable power to allow supplementation of the appellate record if it is in the interests of justice," we granted the motion. Id. at 1330, 1331. Expressing no opinion in the outcome, we "remand[ed] the case to the district court so that it [could] consider [the City's participation in the GIRMA fund] before determining whether Garden City effectively waived its immunity by its agreement to indemnify CSX." Id. at 1331.

On remand, the district court stated the issue as "whether the City is legally authorized to contractually waive its immunity by purchasing insurance to indemnify CSX against third party liability claims." R7-87 at 3-4. Finding that "CSX ha[d] pointed to no express authority for a contract enabling CSX to hold the City liable for negligence claims against CSX," id. at 7-8, "that the Georgia legislature was interested in permitting, contingent on the purchase of insurance, a way for injured members of the public to 'sue city hall' for *negligence* damages . . .

4

, not *contract*-based damages, and most certainly not *contract* damages flowing from the 'tort indemnification' of third parties like CSX," id. at 8 (footnote omitted), and that "contractual indemnification . . . is a considered choice the Georgia legislature should make . . . not a federal court sitting in diversity," id. at 9, the court concluded that the indemnification contract was ultra vires and granted summary judgment in favor of the City.[2] Id. at 9. After certification pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, CSX timely appealed.[3]

## II. DISCUSSION

"This court reviews a grant of summary judgment *de novo*, applying the same standards as the district court." O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). Though the material facts are not in dispute here, we must determine whether the indemnification agreement is void ab initio as a matter of law. In accordance with Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938), we review the district court's decision in light of Georgia law. "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses'

---

[2] The court also granted Third-Party Defendant ARCO summary judgment against the City, except as to liability for attorney fees and costs, and denied as moot ARCO's summary judgment motion against CSX. Id. at 9-10 & n.9.

[3] The case was not closed with the district court's summary judgment order "[b]ecause the City's claim against ARCO still remain[ed]." Id. at 10.

and to offer the state court the opportunity to interpret or change existing law." Mosher v. Speedstar Div. of AMCA Int'l, Inc., 52 F.3d 913, 916-17 (11th Cir. 1995) (footnote omitted). Because this case presents a question of first impression under Georgia law, we seek guidance from the Supreme Court of Georgia and certify the questions set out below.

Georgia "[m]unicipalities are creatures of the legislature. They possess only such power as are expressly delegated to them by the legislature. They possess no inherent powers." Koehler v. Massell, 191 S.E.2d 830, 833 (Ga. 1972). As such, Georgia courts "have long acknowledged that municipal corporations have only limited power to enter into contracts." Precise v. City of Rossville, 403 S.E.2d 47, 49 (Ga. 1991). While "[a] municipal corporation may bind itself by, and cannot abrogate, any contract which it has the right to make," Williams v. City Council of West Point, 68 Ga. 816, 816 (1882), it has no power to enter into a contract if it is not authorized by charter or by legislative grant. Barrett v. City of Atlanta, 89 S.E. 781, 782 (Ga. 1916). There must be express or implied authority. See Forsyth County v. Childers, 525 S.E.2d 390, 392 (Ga. Ct. App. 1999). "If a contract is beyond the power or competence of the local government, then the contract is termed ultra vires and is void." Precise, 403 S.E.2d at 49. Even "'complete performance of such contract on the part of [the other party] will not prevent the

6

municipal corporation from pleading its want of power or the illegality of the contract.'" City of Warm Springs v. Bulloch, 91 S.E.2d 13, 14 (Ga. 1956) (quoting City Council of Dawson v. Dawson Waterworks Co., 32 S.E. 907, 907 (Ga. 1899)). Here, Garden City argues that the indemnification agreement is ultra vires and void on several grounds.

A. Void on Sovereign Immunity Ground

First, the City argues that the indemnity agreement constitutes an impermissible waiver of the municipality's sovereign immunity. "The common law doctrine of sovereign immunity, adopted by [Georgia] in 1784, protected governments at all levels from unconsented-to legal actions." Gilbert v. Richardson, 452 S.E.2d 476, 478 (Ga. 1994) (footnote omitted). By statute, municipalities are clothed with immunity and shielded from "liab[ility] for failure to perform or for errors in performing their legislative or judicial powers." O.C.G.A. § 36-33-1(b) (2000).[4] Thus, "[i]n Georgia a municipal corporation is not liable in damages for injuries arising from the exercise of a governmental function." Boone v. City of Columbus, 75 S.E.2d 338, 339 (Ga. Ct. App. 1953). "The General Assembly may waive the immunity of counties, municipalities, and school districts by law." Ga. Const. art. IX, sec. II, para. IX. Relying on this

---

[4] However, "[f]or neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." Id.

provision, with two exceptions relating to the purchase of liability insurance, "the General Assembly . . . declares it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages." O.C.G.A. § 36-33-1(a). Generally, "a municipality cannot ratify the unlawful acts of its subordinate officials done in pursuance of its governmental functions so as to make itself liable for such acts." Boone, 75 S.E.2d at 340. Accordingly, "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." O.C.G.A. § 36-33-1(a).[5]

---

[5] Section 33-24-51(a) permits a municipality to procure liability insurance covering bodily injury or death or property damage "arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation."

> Whenever a municipal corporation . . . shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased.

O.C.G.A. § 33-24-51(b). Because the indemnification provision involved here exposes the city to liability far beyond the limits of § 33-24-51(b) and the district court itself relied on the general insurance waiver provision in § 36-33-1(a), we will do the same.

8

Since these two code sections are the only ones to waive municipal immunity, the more specific question we need answered is whether the validity of an agreement by a Georgia municipality to contractually indemnify a private party is first even controlled by O.C.G.A. § 36-33-1(a).[6] If so, we then ask the effect of

_____

[6] Indeed, this is the true bone of contention here. CSX, Garden City, and the district court all agree that CSX's claim does not sound in tort, which clearly would involve the doctrine of sovereign immunity, but, rather, in contract. See Appellants's Supplemental Br. at 1 ("The Court may decide this appeal on a contract rather than a tort theory . . . ."); Appellee's Br. at 17 ("[T]he central principle in this appeal does not involve immunity and can be stated simply: without a valid contract <u>with</u> the City, there can be no contract action <u>against</u> the City."); R7-87 at 6 ("CSX is advancing a contract (not tort) claim against the City (*i.e.*, it is seeking recovery under the indemnification *contract* for the cost of any tort claims brought against it)."). CSX principally argues, however, that, because its claim is grounded on the indemnification agreement alone, it is a pure breach of contract action for which the defense of sovereign immunity is not available at all. Thus, the threshold issue is not whether this is a tort or contract action, but whether sovereign immunity is even involved in this case.

The City contends that CSX is estopped from so arguing under the law of the case doctrine, pointing to our statement in <u>CSX I</u> that the indemnity agreement "required the City to waive its sovereign immunity vis-a-vis CSX," 235 F.3d at 1329, and citing our decision in <u>A.A. Profiles, Inc. v. City of Fort Lauderdale</u>, 253 F.3d 576, 582 (11th Cir. 2001) (stating that "[g]enerally, the law of the case doctrine requires a court to follow what has been explicitly or by necessary implication decided by a prior appellate decision"). We agree with CSX that we made no decision in <u>CSX I</u> as to whether the indemnity agreement constituted a waiver of sovereign immunity. We merely said that the agreement, "in effect, required" such waiver, 235 F.3d at 1329, but we did not decide, and remanded to the district court to determine, "whether Garden City effectively waived its immunity by its agreement to indemnify CSX." <u>Id.</u> at 1331. We only granted CSX's motion to enlarge the record because "[t]he existence or non-existence of insurance . . . was pivotal to the district court's resolution of th[e] case." <u>Id.</u> at 1330.

Nevertheless, the doctrine of sovereign immunity and its permissible waiver is clearly implicated in this case. Were it not, we would have little need to certify these questions to the Georgia Supreme Court, since it is clear under Georgia law that "[t]he doctrine of sovereign immunity is available to a municipality against claims based on negligence . . . [but] is not applicable to claims against a municipality which are contractual in nature." <u>City of Atlanta v. Atlantic Realty Co.</u>, 421 S.E.2d 113, 116 (Ga. Ct. App. 1992); <u>see also</u> <u>Precise</u>, 403 S.E.2d at 49 (holding that "municipal immunity is not a valid defense to an action for breach of contract"). As we observed in a remarkably similar case involving Florida law, however, "[i]ndemnification agreements appear to occupy a grey area between two lines of [state law] precedent that address state sovereign immunity, one of which deals with tort actions, the other with breach-of-contract actions." <u>Nat'l R.R. Passenger Corp. (Amtrak) v. Rountree Transp. & Rigging, Inc.</u>, 286 F.3d

9

§ 36-33-1(a) on the indemnification agreement. In this case, the City purchased a

GIRMA liability policy.[7] The Georgia Supreme Court has held that such a policy

constitutes the purchase of liability insurance within the meaning of § 36-33-1(a),

after having concluded that the statutory provision to the contrary remained

unconstitutional. See Gilbert, 452 S.E.2d at 482.[8] We are uncertain, however,

---

1233, 1269 (11th Cir. 2002).

   CSX's argument is not furthered by the recent holding in Satilla Cmty. Serv. Bd v. Satilla Health Servs., Inc., 555 S.E.2d 188, 191, 192 (Ga. Ct. App. 2001), that a state agency "has no sovereign immunity as to claims sounding in breach of contract or indemnity as a contractual right," where the court found that a fourth-party action against the agency "sounds in implied contract of indemnity." After granting certiorari, the Georgia Supreme Court found "no support in Georgia law for 'identical reciprocal implied contractual indemnification.'" Satilla Cmty. Serv. Bd. v. Satilla Health Servs., Inc., 573 S.E.2d 31, 32 (Ga. 2002).

   Thus, although "th[e] dispute is about the *breath of the City's authority* to enter into the subject contract, and not simply what its obligations are under it," R7-87 at 7, what we must determine is whether a municipal corporation's agreement with a private party is void in part ab initio *because* one of its obligations, indemnification, constitutes an impermissible waiver of its tort immunity. The threshold question under that analysis is whether the statutory waiver provision strictly limiting a municipality's authority to waive its sovereign immunity is even controlling. Ordinarily, "[w]hat can not be done by an ordinance can not be done by a contract." Screws v. City of Atlanta, 8 S.E.2d 16, 20 (Ga. 1940). Thus, we must decide whether municipal indemnification is tantamount to waiving immunity in the first place.

[7] The policy covers "all sums which [Garden City] shall be obligated to pay as money damages by reason of liability . . . assumed by [Garden City] under contract or agreement." R4-58, Ex. B at 27. Thus, if § 36-33-1(a) is controlling and does permit the indemnification agreement at issue here, the City's sovereign immunity will be waived "to the extent of the limits of [the] insurance policy." § 36-33-1(a). Here, that limit is $ 1,000,000 per occurrence under the policy's casualty coverage. R4-58, Ex. B at 1. If the property coverage section applies, the policy covers "all risks of physical loss or damage to all Real or Personal Property of every kind and description wherever located in the world occurring during the period of this coverage," id. at 15, including "property which [Garden City] . . . agrees to cover by any contractual agreement normal to its operations." Id. at 17. The per-occurrence limit is on file with GIRMA and therefore unknown to us. Id. at 1.

[8] The statutory provision invalidated provides that participation in the GIRMA plan by a municipality "shall not constitute the obtaining of liability insurance and no sovereign immunity

10

whether the policy "covers an occurrence for which the defense of sovereign immunity is available." O.C.G.A. § 36-33-1(a).

The City indemnified and held CSX harmless from any and all liability, loss, and damage it suffered in connection with the project, unless solely the fault of CSX, including the negligence of others for which the municipality would otherwise not be liable.[9] Thus, it exposed itself to liability for "occurrences" for which the sovereign immunity defense, absent waiver, would be both available[10]

_____

shall be waived on account of such participation." O.C.G.A. § 36-85-20. Though Gilbert specifically referred to § 33-24-51(b) at issue in that case, we see no reason to distinguish the case on that ground. The overriding statutory provision is § 36-33-1(a).

[9] Section 9.1 of the contract in pertinent part provides:

> [Garden City] hereby assumes, and, to the fullest extent permitted by State law (Constitutional or Statutory, as amended), shall defend, indemnify and save [CSX] harmless from and against any and all liability, loss . . . [or] damage . . . arising out of, resulting from, or in any way connected with the construction, presence, existence, repair, maintenance, replacement, operations, use or removal of [a p]ipeline [used for the transmission of raw or treated sewage] or any structure in connection therewith, . . . EXCEPT when caused solely by the fault or negligence of [CSX].

R4-58, Ex. A at 5.

[10] For instance, under a pure tort theory, the City would normally be immunized from damages arising from its own negligence in the performance of governmental functions, see Koehler, 191 S.E.2d at 833, such as "[t]he establishment and maintenance of a sewerage system," see City of Douglas v. Cartrett, 137 S.E.2d 358, 360 (Ga. Ct. App. 1964), including that of its contractors and subcontractors under circumstances for which the City would otherwise be liable, see Fulton County St. R.R. Co. v. McConnell, 13 S.E. 828, 829 (Ga. 1891) ("If [an] independent contractor is guilty of an act of negligence which causes injury to a third person, and the evidence shows that the act does not fall within any of [the statutory] exceptions, the employer is not liable."); O.C.G.A. §§ 51-2-4 to -5.

11

and unavailable[11] in a pure tort action. If § 36-33-1(a) is to be read for its plain meaning, then, waiver of sovereign immunity as to the former would be permissible as, presumably, would an indemnity agreement to that effect, whereas waiver as to the latter would be impermissible as, presumably, would an indemnity

---

[11]    By contrast, under a pure tort theory, the City would normally not be immunized from damages arising from its own negligence in the performance of its ministerial functions, see O.C.G.A. § 36-33-1(b); Atlantic Realty Co., 421 S.E.2d at 116, or from its own negligence in creating or maintaining "a nuisance, permanent in its character, and dangerous to life and health," Bass Canning Co. v. Mayor of Milledgeville, 162 S.E. 687, 689-90 (Ga. 1932), including that of its contractors and subcontractors, see Mayor & Aldermen of Savannah v. Waldner, 49 Ga. 316, 324 (1873) (holding "that if the [private] builders of the sewer in this case, negligently left it unguarded, by not having proper barriers, or lights, or other protection against danger, and it was so permitted to continue for an unreasonable or unnecessary time by the municipal authorities, who had notice, or there are facts from which notice could be reasonably inferred, they are liable for injuries resulting from such neglect to perform their duty"). Indemnifying a private party for these acts does not appear to waive sovereign immunity, since it would not be available in the first place and, therefore, would not be prohibited by § 36-33-1(a). However, the Georgia law on that point is not entirely clear.

In addition, sovereign immunity might not be an "available" defense if the City were sued in tort for damages arising from the negligence or fault of other actors, simply because the claim would most likely not survive a motion to dismiss or for summary judgment. It is not clear, then, whether an indemnity contract assuming liability for the torts of others would be an "occurrence" for which sovereign immunity is not available, and therefore prohibited under § 36-33-1(a), or whether that provision would have no application because, like indemnification for torts committed while performing ministerial duties, indemnification for the torts of others would not waive sovereign immunity at all, since it would not be available in the first place and, therefore, not prohibited.

Finally, the term "occurrence" in § 36-33-1(a) could theoretically also refer to a breach of an indemnity contract itself, thus, rendering any such agreement void, irrespective of the type of liability it assumed, because sovereign immunity is not "available" for breach of contract claims. See Atlantic Realty Co., 421 S.E.2d at 116. However, because indemnity contracts "occupy a grey area" within the doctrine of sovereign immunity, see Nat'l R.R. Passenger Corp., 286 F.3d at 1269, it is questionable that the Georgia General Assembly intended such a result.

12

agreement to that effect. Yet, Garden City's indemnity agreement covers them all.[12]

In addition to the absence of any express authority in § 36-33-1(a) as to the validity of a municipality's indemnification agreement, there is no binding case law on the subject.[13] To complicate matters even further, there are at least two, diametrically opposed policy arguments. On the one hand, "[c]ities [should] be able to induce the CSX's of the world to cooperate in public works projects such as in the case *sub judice* by entering into contractual indemnity agreements." R7-87 at 8. On the other hand, "one modern purpose of the [sovereign immunity]

_____

[12] Section 18.4 of the contract here contains a severability clause. R4-58, Ex. A at 10. Thus, if § 36-33-1(a) permits indemnification for some damages but not for others, Garden City's indemnity agreement may be saved by the clause. However, if the permissibility of indemnification agreements were variable as to the type of liability assumed, a municipality's summary judgment motion on the ground of sovereign immunity would require a court hearing the motion to determine before trial where to lay blame. Indeed, the City argued to the district court in this case that "the Court must first determine that the City was negligent—CSX's or a third party's negligence could have caused the complained of damage—and *then* 'determine whether Georgia law permits a waiver of sovereign immunity for purposes of assuming the tort liability of third parties.'" R7-87 at 3.

[13] The holding in City of Douglas, 137 S.E.2d at 359, 360, 362, voiding a contract entered into by a municipality to pay damages to the owner of land, upon which the municipality had been granted an easement for the purpose of running a sewer line, for "any damage" to the owner's land outside of the easement boundaries, does not help the City's argument here. The contract was found void, not because it waived the city's sovereign immunity, but because it "extend[ed] beyond the term of the council making" the contract and was not otherwise a covenant running with the land. Id. at 361. Also, the opinions of the state attorney general presented by the City, one of them formal, the other informal, suggesting that the indemnity agreement at issue is invalid, are not binding on Georgia courts and, therefore, not on federal courts sitting in diversity. Moore v. Ray, 499 S.E.2d 636, 637 (Ga. 1998); Nat'l R.R. Passenger Corp., 286 F.3d at 1266 n.32.

13

doctrine is to 'preserve the protection of the public purse.'" Gilbert, 452 S.E.2d at 481 n.7 (citation omitted). Because "there is no provision of law for raising the funds with which to pay a claim not authorized or recognized by law[, i]t stands to reason that a municipal corporation cannot make an illegal act legal by a simple act of waiver. In doing so, it would be encroaching on the powers of the State, of which it is only a creature." Boone, 75 S.E.2d at 340. Otherwise, as Garden City points out, "corrupt or merely inept public officers could subject the public to untold financial liability." Appellee's Br. at 16. These rationales apply equally to waivers of sovereign immunity in tort actions and indemnity agreements having the same effect. Thus, even if § 36-33-1(a) were to control the question of the validity of municipal indemnity agreements, we decline to decide the operation of the provision as applied to the facts of this case, since they involve unsettled questions of state law and public policy and, accordingly, certify the question to the justices of the Georgia Supreme Court for their review.

B. Void on Other Grounds

Supposing that the indemnity provision here does not constitute an impermissible waiver of Garden City's sovereign immunity, and, therefore, is not ultra vires on this ground, we must nevertheless consider other possible grounds under state law that might bar the City's indemnification of private parties. See

14

J.E. Riley Inv. Co. v. Commissioner, 311 U.S. 55, 59, 61 S. Ct. 95, 97 (1940) ("Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action."); Magluta v. Samples, 162 F.3d 662, 664 (11th Cir. 1998) (per curiam) ("[W]e may not reverse a judgment of the district court if it can be affirmed on any ground, regardless of whether those grounds were used by the district court."); Turner v. Am. Fed'n of Teachers Local 1565, 138 F.3d 878, 880 n.1 (11th Cir. 1998) ("We must affirm the judgment of the district court if the result is correct even if the district court relied upon a wrong ground or gave a wrong reason.").

Garden City argues two additional grounds for voiding the indemnity provision: it creates both an unlawfully lengthy obligation and an unlawful public debt.[14] Under Georgia law, "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." O.C.G.A. § 36-30-3(a). In Screws v. City of Atlanta, 8 S.E.2d 16 (Ga. 1940), the Georgia Supreme Court extended the prohibition to contracts. Id. at 20 (holding

---

[14] In its first motion for summary judgment, the grant of which was on appeal in CSX I, the City also contended, in addition to its sovereign immunity argument, that the indemnity agreement "impermissibly grants a gratuity[] and violates public policy." 235 F.3d at 1330 n.8. Since we remanded the case "for reconsideration of the issue of immunity in view of the existence of the GIRMA policy," we did not "consider the issues of unlawful obligation and public debt as they may depend on the existence of insurance coverage." Id. We found, however, "no merit in the remaining arguments advanced by the City." Id. Thus, we do not consider them here.

that a contract between a city and a private party whereby the former agrees to supply free water to the latter for a period of twenty-five years is void).

> Consideration of whether municipal contracts are subject to the prohibition . . . involves at least 4 questions: (1) Is the contract governmental in nature and hence subject to the prohibition, or proprietary and hence not subject to the prohibition? (2) If governmental in nature, is the contract subject to an exception? (3) If not, is the contract subject to ratification and has it been ratified? (4) If not, is the municipality estopped from relying on the statutory prohibition?

City of Powder Springs v. WMM Props., Inc., 325 S.E.2d 155, 158 (Ga. 1985) (footnote omitted).

It is clear that the installation and maintenance of sewers is a governmental function. Barr v. City Council of Augusta, 58 S.E.2d 820, 822 (Ga. 1950). Whether a municipality's agreement to indemnify private parties ultimately violates § 36-30-3(a), however, appears to be a question of first impression in Georgia.[15] Though the contract in which the indemnity provision at issue here is contained is "year-to-year, subject to the right of either party hereto to terminate at the end of any one (1) year term by written notice," R4-58, Ex. A at 2, § 2.3, it is unclear to us whether the act of indemnification itself, if the need so arose, would

---

[15] In City of Douglas, the Georgia Court of Appeals voided a contract entered into by a municipality to pay damages to the owner of land, upon which the municipality had been granted an easement for the purpose of running a sewer line, because it went beyond the term of office of the council executing the contract and was not otherwise a covenant running with the land. 137 S.E.2d at 359-62. Unlike that case, the train/truck collision giving rise to our case actually took place *within* the term of office of city officials who approved the agreement.

"prevent free legislation in matters of municipal government," O.C.G.A. § 36-30-3(a), especially in light of the certain delays inherent in litigation, or whether the act would constitute a "'*reasonable* time beyond the official term of the officers entering into the contract for the municipality'" permitted by "'[t]he weight of authority.'" Unified Gov't of Athens-Clarke County v. North, 551 S.E.2d 798, 803 (Ga. Ct. App. 2001) (citation omitted). Accordingly, we certify the question to the Georgia Supreme Court.

The second, other ground asserted by the City to void the indemnification agreement is that it creates an unlawful public debt. The Georgia Constitution prohibits any municipality from "incur[ring] any new debt without the assent of a majority of the qualified voters . . . voting in an election held for that purpose as provided by law." Ga. Const. art IX, sec. V, para. I(a).

> Whenever a political subdivision undertakes a liability which is "not to be discharged by money in the treasury, or by taxes to be levied during the year in which the contract under which the liability arose was made," such a debt is created. Therefore, if a municipality undertakes an obligation that extends beyond a single fiscal year, then a new "debt" has been incurred within the meaning of the Georgia Constitution and requires voter approval.

<u>Barkley v. City of Rome</u>, 381 S.E.2d 34, 35 (Ga. 1989) (citation omitted).[16] As with the statutory provision precluding the binding of legislative successors, we are uncertain whether a city's indemnification agreement constitutes a fiscal obligation extending beyond a single year. Accordingly, we certify this question as well.

Even if the indemnification agreement here is not void as an unlawful waiver of sovereign immunity, binding of successors, or creation of a new public debt, that does not end the inquiry. As we have explained, there must be express or implied authority in order for a municipality to enter into a binding contract. See <u>Forsyth County</u>, 525 S.E.2d at 392. CSX does not argue that express authority exists for municipal indemnity contracts. Rather, they argue that the requisite authority is implied from express constitutional and statutory authority to provide sewer services as well as the authorization contained in the City's charter to enter into contracts for the provision of such services.[17] "A municipal corporation,

_____

[16] Municipalities are permitted by statute "to enter into multiyear lease, purchase, or lease purchase contracts of all kinds for the acquisition of goods, materials, real and personal property, services, and supplies, provided that," <u>inter alia</u>, "[t]he contract shall state the total obligation of the . . . municipality for the calendar year of execution and shall further state the total obligation which will be incurred in each calendar year renewal term, if renewed." O.C.G.A. § 36-60-13(a)(3). While a contract pursuant to, and meeting all the conditions of, § 36-60-13 "would fall outside the purview of Art. IX, Sec. V, Par. I since it does not constitute a 'debt,'" <u>Barkley</u>, 381 S.E.2d at 35, the indemnity provision here clearly does not, and could not, accurately state Garden City's total obligation, and, therefore, is not exempt from the constitutional provision.

[17] The Georgia Constitution provides in part that any "municipality . . . may exercise the following powers and provide the following services: . . . [s]torm water and sewage collection and disposal systems." Ga. Const. art. IX, sec. II, para. III (a)(6). The statutory authority provides:

unless restricted by its charter, has power to enter into any necessary contract for the accomplishment of a corporate purpose. . . . [S]uch power necessarily implies the right to do all things which may be required for the proper execution of such power." Mayor of Washington v. Faver, 117 S.E. 653, 656 (Ga. 1923) (citation omitted).

> Where, by statute, jurisdiction over a subject-matter is conferred upon county authorities, and therein the power to do certain things is expressed, the further power to contract in regard to that subject-matter is to be implied; and a part of this implicit power is the authority to use discretion as to the details of such contracts, subject only to the limitations imposed by the statutes or public policy of the state.

Wright v. Floyd County, 58 S.E. 72, 72 (Ga. Ct. App. 1907) (cited with approval in Smith v. Bd. of Comm'rs, 259 S.E.2d 74, 77 (Ga. 1979)).[18]

---

In addition to the other powers which it may have, any municipal corporation shall have the power under this chapter:

> (1) To acquire by gift, by purchase, or by the exercise of the right of eminent domain, to construct, to reconstruct, to improve, to better, and to extend any water system or sewage system, or both, within the municipal corporation;

> (2) To acquire by gift, by purchase, or by the exercise of the right of eminent domain any lands, easements, rights in lands, and water rights in connection therewith . . . .

O.C.G.A. § 36-34-5.

[18] Recognizing the differences between municipalities and counties, the court neverthless "believe[d] that the measure of [a county's] contractual capacity, in relation to any subject-matter expressly conferred by statute, is not different from that of other public corporations." Wright, 58 S.E. at 74-75.

CSX relies on Hancock County v. Williams, 198 S.E.2d 659 (Ga. 1973) (per curiam) ("Williams I") to argue that this implied authority includes indemnity agreements. In that case, the plaintiffs brought an action "to recover for the death of their mother who was drowned when the automobile in which she was a guest passenger ran into . . . an artificial impoundment of water . . . , on a road which ran directly into such lake without any warning sign." Id. at 660. The plaintiffs filed a claim against the power company that owned the road and the lake. They also filed a claim against a county government that had previously entered into an easement contract with the power company for use of the road and, in that contract, had agreed to indemnify the power company "for any damages arising out of the use of such easement by the county." Id. at 660, 661. The power company filed a cross claim seeking indemnification from the county, and the county moved to dismiss both the claim and the cross claim. Finding that the county was authorized by statute to provide recreational facilities for its residents, the court held that "the contract was authorized [and b]eing an authorized contract, the action would lie thereon" and, accordingly, affirmed the trial court's order overruling both of the county's motions. Id. at 661. In doing so, the court noted that it was not required to first determine whether a state statute, providing for the county's sovereign immunity and its waiver, was unconstitutional as alleged because "[t]he complaint

20

as finally amended set forth a cause of action against [the county] based upon the *contract* which was valid." Id. (emphasis added). Thus, by implication, the court in Williams I refused to dismiss the suit on the ground that the plaintiffs were third-party beneficiaries to the indemnification contract between the county and the power company. See O.C.G.A. § 9-2-20(a) ("As a general rule, an action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested, and against the party who made it in person or by agent."); § 9-2-20(b) ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract.").

In Williams v. Georgia Power Co., 212 S.E.2d 348, 350 (Ga. 1975) ("Williams II"), however, on a postjudgment appeal by the plaintiffs after a jury had returned a verdict for the power company and the county, the court did decide the constitutional question, concluding that the statutory provision providing for the county's sovereign immunity was not unconstitutional. It also found that, since there was no specific statutory authority waiving the county's sovereign immunity and no ground to maintain a nuisance action against the county, the trial "court [had] correctly charged the jury that the only liability of the county was under its indemnity contract with the power company." Id. at 351.

21

In Dekalb County v. Gibson, 246 S.E.2d 692, 692-93 (Ga. Ct. App. 1978), the parent of a child who drowned at a county swimming pool brought a wrongful death action against the county predicated on allegations of negligence and nuisance as well as an action as a third-party beneficiary to a contract allegedly created between the county and the child when he paid admission to the pool. After finding no basis for the nuisance claim and no statute waiving the county's immunity to the tort claim, the court concluded that Williams I would not permit the third-party breach of contract claim because there, presumably unlike in Gibson, "the county had entered into an *indemnity contract under statutory authority* with [the power company] and this contract authorized the suit against the county." Id. at 693. "In the absence of statutory authority to maintain this suit [either as a tort or contracts claim], the doctrine of sovereign immunity completely bars this claim." Id. Thus, Williams I appears to hold that, irrespective of whether sovereign immunity exists, if a county contract is generally authorized, a third-party beneficiary action may be had, while Gibson holds that, absent express statutory authority, a third-party breach of contract claim against a county is barred by sovereign immunity. In other words, Gibson seems to suggest that statutory authority to enter into the contract waives sovereign immunity, while Williams I

22

appears to suggest that statutory authority permits the contract and that sovereign immunity is not even an issue.

In Miree v. United States, 249 S.E.2d 573 (Ga. 1978), the matter was again addressed. The Georgia Supreme Court, in answering certified questions from the former Fifth Circuit, concluded that plaintiffs, who had brought an action against a county government to recover for injuries sustained as a result of the crash of a Lear jet taking off from an airport operated by the county under contract with the Federal Aviation Administration, were not third-party beneficiaries to that contract because "[t]he county's exposure of liability . . . is too broad to permit a contention that every injured party was an intended beneficiary under the public contract in this case." Id. at 574, 575, 576, 579. In doing so, the court first felt compelled to observe that, after "review[ing] the record and the assignments of error in" Williams I, "[t]he subsequent decision of this court in that same case, [Williams II], limiting the holding in the earlier decision, is a correct pronouncement of the law, and anything that was said in the first decision contrary to the pronouncement made in the second decision will not be followed." Id. at 579.

Prior to reading Miree, we understood that Williams I, Williams II and Gibson all endorsed the same basic proposition that, because the indemnity contract between the county and the power company was valid as implied by

23

statutory authorization of the activity giving rise to the contract in the first instance, the plaintiffs's third-party contract claim was also authorized. We do not understand how Williams II limits the holding of Williams I. We also are unsure as to what effect this limitation, if any, has on the validity of the indemnity provision itself, irrespective of the validity of a third-party contract claim brought by plaintiffs seeking, in contracts, what they are barred by sovereign immunity from recovering in a tort action. Furthermore, even if these cases do assume that a county may agree to indemnify a private party for the county's own negligent acts, it is not clear whether the argument presented in this case, that such agreements are void in themselves, was squarely before the court in these other cases. It is also not clear whether such an agreement would also be permissible if the county agreed to indemnification for the negligent acts of other parties in addition to its own.[19]

Thus, we cannot readily agree with CSX that these cases consistently recognize the principle that a municipality's implicit authority "'to enter into contracts necessary and proper to carry into effect [its] powers,'" Wright, 58 S.E. at 74 (citation omitted), extends to indemnity agreements with private parties. The

---

[19] We find Garden City's argument, that these cases are distinguishable because they involve counties and not municipalities, unpersuasive because a county's authority to waive its sovereign immunity is less than that of a municipality. See O.C.G.A. §§ 33-24-51, 36-33-1(a).

pattern of these holdings is confusing to us. Therefore, we certify this question to the Georgia Supreme Court.

After thorough review of Georgia law, we find that these issues remain unsettled and unaddressed and, therefore, certify the following questions:

1.    MAY A GEORGIA MUNICIPALITY CONTRACTUALLY INDEMNIFY A PRIVATE PARTY FOR ANY AND ALL LOSS, DAMAGE, AND LIABILITY ARISING IN CONNECTION WITH A PUBLIC WORKS PROJECT INVOLVING THE PRIVATE PARTY'S LAND?

2.    IF NOT, IS THERE ANY LOSS, DAMAGE, OR LIABILITY ARISING IN CONNECTION WITH A PUBLIC WORKS PROJECT INVOLVING A PRIVATE PARTY'S LAND FOR WHICH A GEORGIA MUNICIPALITY MAY CONTRACTUALLY INDEMNIFY THE PRIVATE PARTY?

### III. CERTIFICATION

This appeal ensued after the district court granted summary judgment in favor of a municipality, finding that the municipality's agreement to indemnify a private party for any and all loss, damage, and liability arising in connection with a public works project involving the private party's land interest was ultra vires and, consequently, void. Because of the important issues involving sovereign immunity and municipal authority to contract, we have decided to certify the above-styled questions to the Georgia Supreme Court. Neither the phrasing used in these questions, nor our own analyses, should limit the Supreme Court's analyses or

25

answers. To assist in its consideration of the questions, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Georgia. Until the Supreme Court responds to our certified questions, all relevant proceedings in this appeal are STAYED.

QUESTIONS CERTIFIED.