**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 20, 2014**

# In the Court of Appeals of Georgia

A14A1216. CITY OF ATLANTA v. DEMITA.

ELLINGTON, Presiding Judge.

Regina Demita brought this nuisance action against the City of Atlanta in the State Court of Fulton County to recover for damage to her home and property allegedly caused by the City's negligent construction or maintenance of a storm water drainage system. A jury found in Demita's favor and awarded her $85,200 in damages, $88,800 in attorney fees, and $54,433.21 in litigation expenses. The City appeals from the judgment, contending, inter alia, that there was no evidence that it created or maintained a nuisance and that it is therefore entitled to judgment as a matter of law. For the reasons explained below, we reverse.

1. The City contends that there was no evidence that it created or maintained a nuisance or that it violated any duty to abate the alleged nuisance. Rather, the City

contends that the evidence established that the developer that built a group of homes, including Demita's home, on Oakridge Avenue, created the conditions that allow water to collect on her property. Accordingly, the City contends that it is entitled to judgment as a matter of law.

> On appeal from a trial court's rulings on motions for directed verdict and judgment notwithstanding the verdict,[1] we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments notwithstanding the verdict are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation, punctuation, and footnote omitted.) *PricewaterhouseCoopers, LLP v. Bassett*, 293 Ga. App. 274 (666 SE2d 721) (2008).

Under Georgia law, municipalities have sovereign immunity against claims of negligence in performing, or failing to perform, their governmental functions.[2]

---

[1] Following Demita's presentation of her case at trial, the City moved for a directed verdict, and, after trial, it moved for judgment notwithstanding the verdict; the trial court denied both motions. See Christopher J. McFadden et al., *Ga. Appellate Practice*, § 9:25 (updated November 2013).

[2] See generally OCGA §§ 36-33-1 ("[T]here is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. . . . Municipal corporations shall not be liable

Generally, a municipality will be immune from liability for negligence in failing to protect property from water incursion.[3]

> [A] municipality[, however,] like any individual or private corporation[,] may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or a ministerial function. This exception to sovereign immunity is based on the principle that a municipal corporation can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose, without just and adequate compensation being first paid.

(Citations and punctuation omitted.) *City of Thomasville v. Shank*, 263 Ga. 624, 624-625 (1) (437 SE2d 306) (1993). Thus, even in the absence of a waiver of its immunity

---

for failure to perform or for errors in performing their legislative or judicial powers."); 36-33-2 ("Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the act."); *Mayor of Savannah v. Palmerio*, 242 Ga. 419, 425-427 (3) (249 SE2d 224) (1978) ("A municipality is immune from suit for acts it performs which are authorized by law and executed in accordance with the judgment or conclusion reached by the municipal authority in the exercise of a governmental function.") (citations omitted); *Albertson v. City of Jesup*, 312 Ga. App. 246, 249 (1) (718 SE2d 4) (2011) (Municipalities have sovereign immunity against claims of negligence in performing, or failing to perform, their governmental functions.).

[3] *City of Atlanta v. Kleber*, 285 Ga. 413, 418-419 (3) (677 SE2d 134) (2009); *Merlino v. City of Atlanta*, 283 Ga. 186, 189 (2) (657 SE2d 859) (2008); *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

to suit, a municipality may be liable for maintaining a continuing, abatable nuisance, such as by negligently constructing a sewer or drainage system or negligently maintaining a sewer or drainage system under its control which causes the repeated flooding of property.[4]

---

[4] *Hibbs v. City of Riverdale*, 267 Ga. at 338 (Where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable. The property owner must show that the municipality's actions in regard to the storm drainage system constituted such exercise of control or acceptance so as to establish a duty on the part of the municipality to adequately maintain it.); *Bass Canning Co. v. MacDougald Const. Co.*, 174 Ga. 222, 227-228 (162 SE 687) (1932) (Because the maintenance by a city of a sewerage drainage system is connected with the preservation of the public health, and therefore is a governmental function, the city ordinarily cannot be held liable for any damage to person or property caused by the negligence of any of the city's servants while engaged in such work or by an error of judgment on the part of its authorities in adopting a general plan of drainage and in determining when, where, and of what size, and at what level, drains or sewers shall be located. But, where negligence in the maintenance by a municipality of a sewerage drainage system results in the creation and maintenance by the city of a nuisance, permanent in its character, and dangerous to life and health, and where the effect of the nuisance is specially injurious to an individual by reason of its proximity to his home, such person is entitled to recover adequate compensation for his injuries, including damages for any decrease in the market value of his realty.); *City of Columbus v. Barngrover*, 250 Ga. App. 589, 592-593 (1) (552 SE2d 536) (2001) (Drainage system that channeled water from city streets under homeowners' property and into sanitary and storm sewers, which the city undertook to maintain, that caused repeated flooding of private property created a continuous abatable nuisance for which the City could be held liable.).

To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition, . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.

(Citations and punctuation omitted.) *Mayor of Savannah v. Palmerio*, 242 Ga. at 426-427 (3) (i).[5] In particular, the liability of a municipality for a nuisance cannot arise solely from its approval of a construction project which leads to an increase in surface water runoff.[6]

The City contends that the evidence demanded a finding that it has never constructed a storm water sewer or drainage system to service Demita's property and that it cannot be held liable for negligently maintaining a system that does not exist.

---

[5] See also *Albertson v. City of Jesup*, 312 Ga. App. at 250 (2) (To hold a municipality liable for maintaining a nuisance, the plaintiff must show that (1) the alleged defect or degree of misfeasance exceeded mere negligence; (2) the act was of some duration and the maintenance of the act or defect was continuous or regularly repetitious; and (3) the municipality failed to act within a reasonable time after knowledge of the defect or dangerous condition.).

[6] *City of Atlanta v. Kleber*, 285 Ga. at 418-419 (3); *Hibbs v. City of Riverdale*, 267 Ga. at 338.

The record shows the following. In 2002, Demita bought a house located at 42 Oakridge Avenue, Atlanta; it was one of four newly-constructed houses on that street. The street, which predated the new in-fill construction, is owned and maintained by the City. Throughout Demita's ownership, water has pooled on the street in front of her property. The area in front of her house (and the house across the street, 43 Oakridge Avenue) is the low point on the street. Before Demita's home was built, water flowed east-west across Oakridge Avenue, which runs north-south. There is no storm drain, sewer grate, manhole, drop inlet, retention pond, or catch basin on the street for runoff to drain into. Water that collects in that low area simply remains standing there until it evaporates, is removed by the City's vacuum trucks, or is splashed onto adjacent property (including Demita's) by vehicles traveling on the road. When it rains heavily, pooling water frequently rises higher than the curbs that the developer installed in front of the new homes, and the rising water overflows onto Demita's property. As a result, her property has sustained erosion, soil saturation, garage and crawlspace flooding, and other damage.

In 2010, the City's Department of Watershed Management evaluated the recurrent flooding at 42 and 43 Oakridge Avenue[7] and compared potential solutions to the problem. Staff members recommended that water be diverted away from the low point on Oakridge Avenue by installing two catch basins to collect runoff at that low point, installing 1660 linear feet (or more) of piping to route the concentrated flow north along Oakridge Avenue to Hosea L. Williams Drive, and installing manholes and other appurtenances to join the new Oakridge Avenue storm sewer to the existing storm sewer on Hosea L. Williams Drive. No remedial project has yet been initiated.

As the City contends, there is no evidence that it ever installed any manhole or grate to allow water on Oakridge Avenue to drain into sewer piping, constructed any catch basin on the street, or took control and responsibility for maintaining any such sewer or drainage infrastructure components. Demita contends that the evidence nonetheless authorized the jury to find that the City is liable for maintaining a

_____

[7] A Department of Watershed Management staff member focused on 43 Oakridge Avenue, the property across the street from Demita, and stated, based on site reconnaissance and available maps and records, that the house "appears to have been constructed in a natural drainage channel."

nuisance, in that the street itself, which the City owns and maintains, constitutes a sewer or drainage system.

Demita's expert, a civil engineer and professional hydrologist, opined that the City has a storm water drainage system that serves Demita's property, "consist[ing] of street curbs and gutters which control and convey storm water through Oakridge Avenue, and other public streets and rights of way of the City of Atlanta." He also opined that the flooding and drainage problems affecting Demita's property "result from the failure of the City of Atlanta to maintain the existing storm water drainage system, which includes the street surface, along with the curbing and gutters located in front of [Demita's property.]" At trial, the hydrologist explained that,

> this street[, Oakridge Avenue,] and most every street that's constructed, is constructed with a high place in the center of the roadway called the crown[,] . . . so that water that falls on that street drains to the side . . . against [the] curb . . . and is carried off. . . . So . . . the street is actually a part of the drainage system, [and] the curb is part of the drainage system.

In his opinion, "curbing is storm water related. . . . [T]he drainage system within a city is that the pavement drains the water over to the curb and gutter. And then the curb and gutter holds that water, or at least directs that water to a [catch basin.]" He

8

noted, though, that, in this case, the water is not carried away and there is no catch basin; instead, water collects at the lowest point of the street.

Accepting this testimony as evidence that the City maintains a sewer or drainage system on Oakridge Avenue would mean that the City maintains a sewer or drainage system on a street simply by virtue of owning a street that is paved and (at least partially) edged with curbs and performing maintenance on the street such as periodic repaving. It follows that, accepting the hydrologist's definition of a "drainage system," the City maintains a sewer or drainage system on virtually *every* paved, curbing-edged, city-controlled street throughout Atlanta. Accepting the hydrologist's definition of a "drainage system," the City could be liable for maintaining a nuisance to any property owner who, like Demita, owns property adjacent to a low point on a street where water collects and repeatedly overflows the curbing, floods that adjacent property, and causes damage there. Such an expansive definition of maintaining a sewer or drainage system is not consistent with Georgia jurisprudence.[8] Because there is no evidence that the City negligently constructed or maintained a sewer or drainage system under its control which has caused the repeated flooding of Demita's property, the City cannot be held liable for maintaining

---

[8] See authority cited in footnotes 2 through 6, supra.

9

a nuisance under this theory. *City of Atlanta v. Kleber*, 285 Ga. at 418-419 (3) (Contention that, as a result of new construction approved by the city, runoff increased and contributed to the flooding of the plaintiff's property failed to raise a triable claim of nuisance, where the homeowners failed to show that the city acquired ownership or actively exercised control over the culvert and pipes the permittee installed.); *Merlino v. City of Atlanta*, 283 Ga. at 189 (2) (Where there was no evidence that the city owned a drainage pipe on private property or exercised direct dominion and control over it, and no evidence that the city took any affirmative steps to repair, restore, or maintain the pipe, there was no basis for holding the city liable for an alleged nuisance based on its failure to prevent the property owners from plugging the pipe.).

In the alternative, Demita contends that, regardless whether there is a drainage system serving her property, the City can be held liable for a nuisance created by water draining off of city-maintained streets, citing *Bass Canning Co. v. MacDougald Constr. Co.*, 174 Ga. 222 (162 SE 687) (1932), and *Gleaton v. City of Atlanta*, 131 Ga. App. 399 (206 SE2d 46) (1974) (physical precedent only). Neither of those cases, however, stand for the proposition that a claim of nuisance will lie where a municipality simply maintains a street off of which water flows. *Bass Canning Co.*

10

*v. MacDougald Constr. Co.*, 174 Ga. at 222 (the city contracted for the installation of storm sewers, catch basins, and manholes and for the conversion of an open perpendicular sewer into a closed manhole); *Gleaton v. City ofAtlanta*, 131 Ga. App. at 399 (combined city sewers ran through the plaintiff's property). This is not a case where the City's conduct in maintaining a street diverted or changed the flow of water so that it flooded adjacent property. Rather, the builder placed new construction adjacent to an existing city street and natural forces did the rest. See id.

Because there is no evidence that the City maintained a nuisance under either theory advanced by Demita, the City is not liable for Demita's property damage. The trial court therefore erred in denying the City's motions for a directed verdict and for judgment notwithstanding the verdict.

2. Given our ruling in Division 1, supra, the City's remaining claims of error are moot.

*Judgment reversed. Phipps, C. J., and McMillian, J., concur in judgment only.*