A97A0408. ARVIDA/JMB PARTNERS, L.P.-II et al. v. HADAWAY et al.
(489 SE2d 125)

MCMURRAY, Presiding Judge.

Plaintiffs Thomas E. Hadaway and Linda R. Hadaway brought this trespass and nuisance action against defendants Arvida/JMB Partners, L.P.-II and Arvida/JMB Managers-II, Inc. to recover for damages caused by increased siltation of Upper Allatoona Creek which flows over the boundary of their property. Defendants appeal following a jury verdict and entry of judgment in favor of plaintiffs. *Held*:

1. Defendants' first two enumerations of error maintain that the trial court erred in denying their motion for judgment notwithstanding the verdict on the issue of liability for damages for trespass or nuisance and on the issue of attorney fees. The standard for granting

---

a motion for j.n.o.v. is the same as for the grant of a directed verdict, that is, that there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a).

The plaintiffs purchased their property in 1977 and completed construction of a home the following year. The siltation problem first arose in 1988, about the time that development began of a subdivision known as Burnt Hickory Lakes (hereafter "BHL"). At that time BHL was being developed by Douglas F. Dowd and various entities with which he was involved. Dowd and the related entities were sued by the plaintiffs in an earlier action grounded on essentially the same trespass and nuisance theories as those upon which the present case is predicated. That earlier action was terminated by a settlement agreement which is the primary basis for the defense in the case sub judice.

Defendants acknowledge that the decision in *Ross v. Hagler*, 209 Ga. App. 201 (433 SE2d 124) provides authority that the evidence in the present case presents jury questions on the liability issue and the bad faith attorney fees issue. However, defendants argue that the present case is factually distinguishable from those in that earlier case because the settlement agreement in the Dowd action operates to bar plaintiffs' claims in the present action.

The relevant portions of that settlement agreement provide that:

"1. Plaintiffs will dismiss with prejudice the amended complaint filed April 26, 1989; . . .

"3. Plaintiffs will provide a full and final release of any and all claims against Douglas F. Dowd, Dowd Developments, Burnt Hickory Development Corporation or any other entity in which Douglas F. Dowd has an interest, their officers, directors, agents, employees, predecessors in interest, successors, assigns, and other legal representatives arising out of the development of Burnt Hickory Lakes Subdivision;

"4. Plaintiffs represent that they are not aware of any downstream property owners who have asserted or plan to assert any claims against Defendants with respect to sediment and silt in the creek;

"5. Plaintiffs acknowledge that Arvida will purchase the Burnt Hickory Lakes Subdivision and will resume further construction at said subdivision. Plaintiffs enter into this agreement with the acknowledgment that further siltation in the creek may occur as a result of the Arvida construction;

"6. Plaintiffs will commence removal of silt from that portion of the creek on the Plaintiffs' property within 30 days of the occurrence of the following events;

"(a) finding by Cobb County of compliance with county regula-

tions for erosion and sediment control at the Burnt Hickory Lakes Subdivision and a removal of the Stop Work Order now in place, and

"(b) notification to Plaintiffs by Arvida of sufficient sediment and erosion control measures in place to prevent further adulteration of the creek on Plaintiffs' property;

"7. Prior to beginning the silt removal operation Plaintiffs will cooperate with Arvida in any reasonable interim measures Arvida deems necessary to prevent downstream adulteration of the creek and further, once silt removal begins on Plaintiffs property, Plaintiffs will proceed in good faith to complete silt removal as soon as practicable. Plaintiffs further agree not to take any action which will cause the silt in the creek on Plaintiffs property to flow further downstream;

"8. Upon commencement of silt removal said operation will be done under the supervision of Derry Stockbridge who, upon completion of said silt removal operation will provide a letter of completion of work which will be provided to Defendants;

"9. Defendants agree to pay to Plaintiffs the sum of $30,000.00 by cashiers check made payable to the law firm of Porter & Doster upon the execution of this agreement and receipt of the documents referenced in paragraphs one and three of this agreement;

"10. Plaintiffs enter into this agreement with the understanding that Defendants are performing no further work at Burnt Hickory Lakes Subdivision other than efforts to achieve compliance with Cobb County Erosion and Sediment Control Ordinances; . . .

"This document fully and accurately details all elements of the agreement between the parties."

This settlement agreement was signed by the plaintiffs and by Dowd, both individually and for certain related entities. Neither the defendants nor any related Arvida entities signed or participated in the negotiations culminating in the Dowd action settlement agreement.

The crux of defendants' position is their argument that they are third-party beneficiaries under the Dowd settlement agreement to whom is granted under the terms of that agreement the consent of plaintiffs, or a license, to trespass upon the land of the plaintiffs by continued siltation of the creek in connection with their development of BHL. See *Spencer v. Mayor &c. of Gainesville*, 140 Ga. 632 (2) (79 SE 543); *Sheftall v. Zipperer*, 133 Ga. 488, 492 (2) (66 SE 253); *Newman Mfg. Co. v. Young*, 109 Ga. App. 763 (137 SE2d 367). While the proposition advanced by defendants may be authorized under the evidence from the trial, in the present posture of the case we need hold only that such a conclusion is not compelled as a matter of law. We therefore find defendants' first two enumerations of error which are predicated on the supposition that the Dowd settlement agree-

ment bars plaintiffs' claims to be lacking in merit.

While the defendants may benefit from plaintiffs' performance of their obligations under the Dowd settlement agreement, such is not alone sufficient to establish that defendants are third-party beneficiaries of the settlement agreement. It must also be established that there was an intent on the part of the parties to the settlement agreement to bestow some advantage upon defendants. *Broadfoot v. C & S Nat. Bank*, 208 Ga. App. 382, 383-384 (430 SE2d 638), overruled in part on other grounds, *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (2) (446 SE2d 741); *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 391-392 (1) (367 SE2d 278). In our view, the Dowd settlement agreement is at best ambiguous on this question of whether there was any intent to benefit the Arvida entities such as defendants.

The defendants rely particularly upon plaintiffs' receipt of a sum of money combined with the indication under paragraph 5 that plaintiffs recognized that further siltation would occur during the Arvida construction of BHL and the agreement in paragraph 6 that plaintiffs would see to silt removal after receiving certain notices. However, we do not agree that plaintiffs' acknowledgment that further siltation would be a likely result of further construction necessarily means that they consented to a further trespass upon their land. Nor does the provision regarding the timing of the cleanup necessarily suggest consent to a further trespass since it may only reflect an attempt to seek an end to the siltation problem before expending resources for this purpose. We also note the obvious alternative hypothesis that the provisions relied upon by defendants merely reflect measures taken by the parties to the settlement agreement to avoid liability to other downstream property owners.

Furthermore, application of the statutory rules of construction fails to resolve the apparent ambiguity of the settlement agreement. See OCGA § 13-2-2. Consequently, the trial court did not err in submitting to the jury the question of the proper construction of the Dowd settlement agreement. *Chattahoochee Chase Condo. Assn. v. Ruben*, 221 Ga. App. 724, 725 (1) (472 SE2d 520); *Century 21 Pinetree Properties v. Cason*, 220 Ga. App. 355, 358 (2) (d) (469 SE2d 458); *Travelers Indem. Co. v. A. M. Pullen & Co.*, 161 Ga. App. 784, 790 (8) (289 SE2d 792).

It follows that defendants' theory of estoppel was also properly submitted to the jury. This theory of defense is predicated on alleged promises contained in the Dowd settlement agreement and whether or not such promises existed must be determined by the jury in the course of resolving the ambiguity of the agreement.

Insofar as defendants' contention that it was error for the trial court to deny their motion for j.n.o.v. as to the attorney fees issue is predicated upon the alleged consent provided by the Dowd settle-

ment agreement, it requires no further comment. However, defendants' argument may also present a second position, that even if there is a factual question as we have found to exist with regard to the intent of the parties to the Dowd agreement, that the motion should have been granted because the evidence compels a conclusion that defendants were not guilty of bad faith. This supposition is based on the apparent knowledge of both plaintiffs and defendants, from the time that defendants assumed control of the development, that further development would likely result in further siltation of defendants' property despite the prodigious efforts of defendants to curtail the problem. The flaw in this argument, that the siltation was unintentional, is the presumption that development of the project would inevitably continue. In fact, defendants chose to continue development of the project in the face of certain knowledge that further damage to plaintiffs' property would result. In view of this evidence of bad faith on the part of defendants, the trial court did not err in denying defendants' motion for j.n.o.v. as to the attorney fees issue. *Ross v. Hagler*, 209 Ga. App. 201, 204 (3), supra.

2. In their remaining enumeration of error, defendants maintain that the trial court erred in charging the jury under OCGA § 51-12-6. We are referred by defendants' brief to an objection that "I have a problem with whichever of the charges the Court was using, and it would have been 41 or 43, I think, to the extent that damages for discomfort, loss of peace of mind, happiness and annoyance was given." The language from the charge which defendants identify as that which they challenge was not contained in plaintiffs' Request to Charge Nos. 41 or 43, although it may have been given in lieu of those requests.

" 'A party may not complain of the giving or failure to give an instruction to the jury unless he objects to the instruction before the jury returns its verdict, stating distinctly his objection and the grounds of his objection. OCGA § 5-5-24 (a). Failure to except before verdict generally results in a waiver of any defects in the charge (cit.), the exception (being) a substantial error which was blatantly apparent and prejudicial, and which resulted in a gross miscarriage of justice. (Cits.)' (Punctuation omitted.) *Hayden v. Sigari*, 220 Ga. App. 6, 11 (6) (467 SE2d 590) (1996)." *Pope v. Goodgame*, 223 Ga. App. 672, 675 (3) (c) (478 SE2d 636). In this instance, nothing is preserved for appellate review because of the failure to state any grounds for the objection. *Dept. of Transp. v. Old Nat. Inn*, 179 Ga. App. 158, 162 (4) (345 SE2d 853).

Nonetheless, there has been no actual prejudice to defendants or miscarriage of justice arising from the trial court's use of language from OCGA § 51-12-6, which sets the measure of damages for injury to peace, happiness, or feelings, by the enlightened consciences of the

jurors. Pursuant to OCGA § 41-1-4, a plaintiff in an action for nuisance may recover for both damage to the person and the property. *City of Atlanta v. Murphy*, 194 Ga. App. 652 (391 SE2d 474). In the nuisance case, "[t]he measure of damages for 'discomfort, loss of peace of mind, unhappiness and annoyance' of the plaintiff caused by maintenance of a nuisance is for the enlightened conscience of the jury. *Mayor &c. of Waynesboro v. Hargrove*, 111 Ga. App. 26 (2) (140 SE2d 286) (1965)." *City of Columbus v. Myszka*, 246 Ga. 571, 573 (6) (272 SE2d 302). See also *Roddenbery Farms v. Leverich*, 192 Ga. App. 153 (384 SE2d 243). The issue of damages to the person was a proper element of plaintiffs' recovery and was submitted to the jury on the proper measure of damages.

*Judgment affirmed. Ruffin, J., concurs. Smith, J., concurs in the judgment only. Beasley, J., not participating.*

DECIDED JULY 15, 1997.

*Greene, Buckley, Jones & McQueen, Francis C. Schenck*, for appellants.

*Hamil, Dickinson & Dubuc, Brian M. Dubuc*, for appellees.