DECIDED FEBRUARY 17, 1999 —
RECONSIDERATION DENIED MARCH 10, 1999 —

*Stephen T. Maples*, for appellant.
*J. Tom Morgan, District Attorney, John H. Petrey, Robert M. Coker, Assistant District Attorneys*, for appellee.

A99A0265. TYLER et al. v. LINCOLN et al.
(513 SE2d 6)

BEASLEY, Presiding Judge.

Doyster Tyler and his wife brought this action against Steve Lincoln and Lincoln Realty, who are the developers of a subdivision adjacent to plaintiffs' property, and others. Plaintiffs complain that development of the subdivision has caused excessive stormwater and sediment to be discharged onto their land and into their ponds. Plaintiffs appeal the trial court's grant of summary judgment to the developers.

Between 1975 and 1987, the Tylers assembled an 11.8-acre tract of land in Lowndes County. When they acquired the property, there was a cypress pond in the rear immediately adjacent to a Norfolk Southern railroad track. Toward the front, plaintiffs located their residence and built two additional ponds, one used for fishing. A drainage ditch connects these two ponds with the cypress pond.

In 1992, the developers began constructing Sweetwater Subdivision on land lying on the other side of the railroad track. There is a natural flow of water from the subdivision onto plaintiffs' property, and it is managed by a 24-inch culvert which drains from underneath the railroad track into the cypress pond. In 1994, plaintiffs began complaining to the county of excess stormwater and sediment discharge from the subdivision. The county — which had approved the subdivision's erosion, sedimentation, and stormwater (i.e., drainage) plan — refused to take any action unless plaintiffs submitted documentation of their claim prepared by a registered engineer, but none was provided.

In 1995, Norfolk Southern wrote to the Lowndes County Engineer that the calculation of pre-development and post-development runoff coefficients in the plans for the subdivision indicated a 41 percent increase in post-development stormwater runoff onto adjacent property. Norfolk asserted that the existing culvert was an inadequate containment device, contended that the increased runoff would damage its railroad and plaintiffs' property, and suggested that the county require the developers to construct a detention pond within

the subdivision.

Tyler deposed that heavy rains deluge his property with excessive stormwater runoff from the subdivision, which has resulted in the deposit of an undetermined amount of sediment onto plaintiffs' land and into their ponds. According to Tyler's affidavit, his ponds were clear prior to development of the subdivision; they are now so polluted they cannot be used for recreational or aesthetic purposes; flooding depicted in photographs of record resulted from excessive stormwater runoff from the subdivision; and he has repeatedly asked the subdivision developers to correct the problems to no avail. At the time of his deposition he had not attempted to calculate his damages.

Plaintiffs' expert Freshley affirmed that some sedimentation had been discharged from the subdivision into plaintiffs' cypress pond, which he attributed to inadequate soil erosion control measures within the subdivision, and that more water is now being discharged into plaintiffs' ponds than before the subdivision was developed. He offered no opinion as to damages. Plaintiffs submitted photographs from which a jury could find inadequate erosion and/or sediment control measures in the subdivision, flooding of plaintiffs' property, and excessive turbidity and discoloration in their ponds.

Lowndes County Soil Erosion Control Specialist Miller determined, from inspections of plaintiffs' property and NTU (nephelometric turbidity unit) readings, that there has been a very minimal amount of sediment deposits from the subdivision onto plaintiffs' property and none in their ponds. After receiving complaints from plaintiffs, a committee from the Georgia Soil & Water Conservation Commission inspected the site and found that although erosion and sediment control structures in the subdivision were inadequately maintained in certain areas and absent in others, there was no sedimentation on plaintiffs' property and therefore no significant sediment damage.

Tyler testified that algae has formed in plaintiffs' front ponds making fishing impossible but presented no evidence this was attributable to increased water runoff or subdivision sediment. During an investigation into a fish kill in one of plaintiffs' ponds, state environmental personnel found no evidence that contaminated water was being discharged onto plaintiffs' property, that subdivision sediments detrimentally impacted the property, or that the subdivision was impacting the two ponds.

DeVane, the engineer who designed the drainage plans for the subdivision, acknowledged that the 41 percent increase in the runoff coefficients which he had calculated would increase the total volume of surface water runoff, but he had concluded that wetlands within the boundaries of the subdivision would adequately contain the additional runoff.

A Lowndes County ordinance prohibits a drainage system from effecting a net increase of water flow onto adjacent land unless the owner agrees to the proposed drainage design, and all drainage systems discharging water into a creek, stream, or natural body of water including wetlands must pass through an approved sedimentation or detention pond prior to discharge. Because DeVane determined that there would be no net increase of water onto adjacent property, the subdivision developers did not obtain plaintiffs' agreement to the drainage system.

1. The court erred in granting summary judgment to the developers on the plaintiffs' nuisance, trespass, and negligence counts.

The developers sought summary judgment on these counts on grounds that they fully complied with all county ordinances and legal requirements and because all of the government agencies investigating this matter found there has not been any increase in the discharge of water or sediment onto plaintiffs' property or damage thereto. But it would appear that the county ordinance was violated by reason of the developers' failure to construct a sedimentation or detention pond to control the flow of surface water from their subdivision into both wetlands on their property and a cypress pond on adjacent property.

There are also unresolved issues concerning whether the developers are currently in violation of Georgia's Erosion & Sedimentation Act.[1] For all land-disturbing activities, this act requires best management practices which include proper installation and maintenance of facilities to control sediment and stormwater runoff and soil erosion.[2] Violations of the county ordinance and state statute would constitute negligence per se.[3] And the testimony of Tyler and his expert, the letter from the railroad, and photographs in the record would authorize a jury to find that development of the subdivision has increased the flow of surface water and sediment onto plaintiffs' property.[4] Such evidence would support findings of trespass and nuisance.[5]

As to damages,

[a] failure on the part of [plaintiffs] to produce any probative evidence as to the specific amount of damage they may have suffered is not a viable basis for the grant of summary judg-

---

[1] OCGA § 12-7-1 et seq.

[2] OCGA § 12-7-6.

[3] See *Horney v. Panter*, 204 Ga. App. 474, 476 (2) (420 SE2d 8) (1992).

[4] A witness knowledgeable of the facts, even though not an expert, may give his opinion as to whether or not there has been an increase in the flow of water onto property. *DeKalb County v. McFarland*, 231 Ga. 649, 653 (2) (g) (203 SE2d 495) (1974).

[5] See *Shaheen v. G & G Corp.*, 230 Ga. 646, 648 (2) (198 SE2d 853) (1973); *City of Macon v. Cannon*, 89 Ga. App. 484, 492 (3) (79 SE2d 816) (1954).

ment against them. "The law infers some damage from the invasion of a property right; and if no evidence is given of any particular amount of loss, it declares the right by awarding what it terms 'nominal damages.' (Cits.)" [Cit.][6]

The measure or quantification of personal damages recoverable in a nuisance case is the enlightened conscience of the jury.[7] Actual damages as such, i.e., injuries, are evidenced by a showing that property owners are deprived of the full use and enjoyment of their property by the increased flow of surface waters or sediment on it.[8]

2. The court did not err in granting summary judgment to developers on the count of plaintiffs' complaint alleging violation of their riparian rights.

Riparian rights are defined as the rights of the owners of lands on the banks of watercourses.[9] Georgia statutes refer to watercourses as "running waters."[10] Although plaintiffs correctly state that a swale or depression over which surface water runs according to the laws of nature is a watercourse even if it has no defined banks,[11] surface water runs from the subdivision onto plaintiffs' property by means of a man-made structure, i.e., a culvert. The doctrine of riparian rights is simply inapplicable.

3. Neither did the court err in granting summary judgment to the developers as to plaintiffs' claims for punitive damages under OCGA § 51-12-5.1 (b) and attorney fees under OCGA § 13-6-11.

Plaintiffs base these claims on assertions that in creating the drainage system for the subdivision, the developers wilfully or intentionally diverted water onto plaintiffs' property and/or failed to correct the resultant problems when brought to their attention. Plaintiffs maintain that the developers are thereby chargeable with "bad faith," so as to authorize a recovery of attorney fees under OCGA § 13-6-11, and with "that entire want of care which would raise the presumption of conscious indifference to consequences," so as to warrant punitive damages under OCGA § 51-12-5.1 (b).

There is no evidence of any complaints to the developers while the subdivision was being built or that the drainage system was designed with knowledge that it would increase the runoff of stormwater or sediment onto plaintiffs' property. Because of this, and given the developers' compliance with all requirements imposed by the

---

[6] *C & S Trust Co. v. Phillips Petroleum Co.*, 192 Ga. App. 499, 501 (5) (385 SE2d 426) (1989).

[7] *Arvida/JMB Partners v. Hadaway*, 227 Ga. App. 335, 340 (2) (489 SE2d 125) (1997).

[8] See *Ponce de Leon Condos v. DiGirolamo*, 238 Ga. 188, 190 (3) (232 SE2d 62) (1977).

[9] Black's Law Dictionary (Rev. 4th ed. 1968), p. 1490.

[10] 29 EGL Water, § 2, p. 30 (1998 Rev.); see OCGA § 44-8-1.

[11] *Pelham Phosphate Co. v. Daniels*, 21 Ga. App. 547, 556 (12) (94 SE 846) (1918).

county,[12] plaintiffs' failure to comply with the county's request that they provide documentation of their complaints,[13] and the uniform findings of the various governmental agencies as to plaintiffs' lack of damages, the developers are not chargeable with either bad faith or a conscious indifference to consequences in designing or failing to maintain or repair the subdivision's drainage system.[14]

*Judgment affirmed in part and reversed in part. Blackburn and Barnes, JJ., concur.*

DECIDED FEBRUARY 9, 1999 —
RECONSIDERATION DENIED MARCH 10, 1999 — ■

*Donald D. J. Stack*, for appellants.

*Newman, Sapp & Davis, David A. Sapp, Whelchel, Brown, Readdick & Bumgartner, Gregory T. Carter, Miller & Towson, Wallace Miller III, Alexander & Vann, William C. Sanders*, for appellees.

---

[12] Miller testified that the county may have issued one or two notices to the developers to comply with the erosion control requirements of the Erosion & Sedimentation Act, but that each time a notice was issued compliance was forthcoming.

[13] Plaintiffs have also failed to document their complaints to the subdivision developers.

[14] See *Gen. Refractories Co. v. Rogers*, 240 Ga. 228, 233-236 (1), (2) (239 SE2d 795) (1977) (no showing defendant wilfully or intentionally diverted water so as to cause unnatural deposit on plaintiff's property; defendant entitled to a directed verdict on claims for punitive damages and attorney fees); compare *Ponce de Leon Condos*, supra at 189-190 (1), (2) (award of punitive damages and attorney fees supported by evidence defendants constructed and then failed to correct drainage system which increased discharge of surface water onto plaintiff's property notwithstanding continuing complaints by plaintiff from inception of project); *Arvida/JMB Partners*, supra at 339 (1) (award of attorney fees supported by evidence that defendants chose to continue development of project in face of certain knowledge that further damage to plaintiff's property would result).