**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 20, 2016**

# In the Court of Appeals of Georgia

A16A1062. STROUD et al. v. HALL COUNTY.

PETERSON, Judge.

Roy Don Stroud ("Don Stroud"), as trustee of the Roy Don Stroud Revocable Living Trust, and his son, Mark Don Stroud ("Mark Stroud"), as trustee of the Myrtle Jean Stroud Revocable Living Trust (collectively, "the Strouds"), claim that Hall County's maintenance of a road that abuts their property has caused flooding and other damage to it. The Strouds appeal from the trial court's order granting summary judgment to the County on their claims. The trial court granted summary judgment on three alternative bases, finding that the Strouds could not prove causation, had failed to present evidence of damages, and were barred from bringing their claims by the statute of limitations. The Strouds challenge each of these conclusions on appeal, and also argue that the trial court erred by failing to address their inverse

condemnation claim to the extent that it was based on trespass, including a claim arising from the County's removal of ground vegetation from their property. Because we agree with the Strouds that the trial court erred in each of its three alternative bases for granting summary judgment – to the extent that the Strouds are claiming inverse condemnation as a result of how the County maintained the road in question – we reverse in part. However, we affirm to the extent that the Strouds are claiming that the road itself causes flooding on their property. In addition to reinstating claims based on allegations that the County's maintenance of the road caused flooding on the Strouds' property, we reverse the trial court's implicit grant of summary judgment to the County on the Strouds' claims that the County's maintenance activities otherwise removed vegetation from the property, as we reject the County's position that there is no evidence this happened more than once.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Ass'n of Savannah v. Chatham Cty.*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, Don Stroud purchased and began living on the property in question ("the Property") in 1969. The County owns and maintains Walter Stover Road ("the Road"), which runs along one side of the Property. The County officially accepted the Road as a county road in 1984, but Don Stroud testified that he has seen County trucks performing maintenance on the road ever since he purchased the Property.

Don Stroud testified that, at the time he purchased the Property, it was six to seven inches higher than the Road, and storm water naturally flowed off the Property and over the Road. In the early 1980s, Don Stroud began noticing ponding of rainwater in a section of yard on the Property. The Strouds say that the area of ponding has increased over time.

The Strouds attribute this ponding to an increased elevation of the Road as a result of the County's maintenance of the Road. As part of its maintenance of the Road, the County periodically scrapes the road and installs additional gravel on it. The Strouds claim the Road has become higher due to inadequate scraping when new gravel is added. Don Stroud testified that the County has been "using my yard for [a] detention pond" for 30 years. He testified that he did not know the elevation difference today, although at one point he opined that the Road may be about six inches higher than the Property. In 2013, in an effort to stop the flow of water into the

yard, Don Stroud had a wall erected about 10 feet from the Road's right-of-way. He says the wall was significantly higher than the Road when installed, but the Road's elevation has since risen to a height almost equal to that of the wall.

In addition to the flooding, the Strouds have complained about the County's removal of vegetation from their property while maintaining the Road. In his deposition, Don Stroud testified that the County once used a "bush hog" that destroyed an area of ground cover on the Property. In a subsequent affidavit, Don Stroud testified that the "bush hogging incident" occurred in July 2012.

The Strouds say that the flow of water onto the Property causes erosion and deposits of mud, kills vegetation, results in downed trees, and prohibits the use of that part of the Property. They contend that the County's action diminished the value of the Property. In their depositions, the Strouds both said that they did not know the current fair market value of the Property. In his subsequent affidavit, Don Stroud offered two alternative measure of damages. First, he attached a $26,050 estimate from a landscape architect for raising the level of the Property such that water no longer would flow from the Road onto the Property. Second, Don Stroud gave his opinion, "based on [his] review of other asking prices for building lots in Hall County," that the value of the portion of the Property that the County has "totally

4

taken" is worth not less than $10,000 as a building lot. Additionally, he opined that he has lost the value of at least $2,500 worth of vegetation and three trees worth about $10,500.

Don Stroud testified that he gave verbal notice to the County about the flooding problem shortly after he first observed it in the early 1980s. He complained periodically thereafter. In 2013, County engineering personnel gave County commissioners four options for addressing Don Stroud's complaints. Three of the options involved installation of piping to assist with drainage; the other involved lowering and paving a short section of the Road. The commission did not implement any of those options.

On June 24, 2014, the Strouds brought a verified complaint against the County, asserting claims of trespass, nuisance, and inverse condemnation. The trial court granted the Strouds' motion for a temporary injunction, prohibiting the parties from disturbing the status quo as to the flow of water between the Property and the Road, absent mutual agreement. Shortly thereafter, the County filed a motion for summary judgment, which the trial court granted. The trial court found that there was no evidence in the record that the County caused any elevation of the Road relative to the Property. The trial court found there was no competent evidence of damages

because the landscaper's estimate was hearsay and Don Stroud's testimony about the value of his property as a building lot did not state a proper basis for his opinion. The trial court also found that the action was barred by the four-year statute of limitations because the claimed nuisance was a permanent one and any increased ponding was a change in degree, not a new harm that would restart the limitations period. The Strouds challenge each of these three alternative bases for summary judgment on appeal.

1. First, the Strouds argue that the trial court erred in concluding that there was no evidence that the County caused any elevation of the Road relative to the Property. We agree that the trial court erred.

"Causation is an essential element of nuisance, trespass, and negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury." *Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 159 (2) (787 SE2d 171) (2016) (citation and punctuation omitted). "The existence of proximate cause is a question of fact for the jury except in palpable, clear, and indisputable cases." *Bord v. Hillman*, 335 Ga. App. 18, 21 (1) (780 SE2d 725) (2015) (citation and punctuation omitted).

6

Here, the trial court found that the record lacked evidence of causation because Don Stroud's testimony that the Property used to be six to seven inches above the Road and now is below the Road (1) was "a conclusion 'unsupported' by anything" and (2) did not amount to evidence that the County did anything to cause any change to the relative elevations of the property and the Road. However, "[a] witness knowledgeable of the facts, even though not an expert, may give his opinion as to whether or not there has been an increase in the flow of water onto property." *Tyler v. Lincoln*, 236 Ga. App. 850, 852 (1) n.4 (513 SE2d 6) (1999) (citation and punctuation omitted) (*reversed on other grounds by* 272 Ga. 118 (527 SE2d 180) (2000)). And Don Stroud testified not only that the elevation changed, but also that the elevation of the Road was caused by the County's repeated grading of the Road by adding gravel. His son gave similar testimony to that effect.

We repeatedly have held that a lay witness' personal observations about water flow are probative of causation issues in a nuisance case. *See Newton's Crest Homeowners' Ass'n v. Camp*, 306 Ga. App. 207, 211-12 (1) (702 SE2d 41) (2010) (homeowners' testimony that defendant's work on nearby subdivision and road increased amount and velocity of stormwater, silt, and mud running onto their property and that excessive runoff caused damage "was not mere speculation or

conjecture, but was competent and admissible evidence"); *Green v. Eastland Homes, Inc.*, 284 Ga. App. 643, 645-47 (1) (644 SE2d 479) (2007) (lay testimony as to excessive runoff after development of adjoining property, along with expert testimony that the runoff was caused by the defendants' development and construction activities, was sufficient causation evidence for plaintiff to avoid summary judgment); *Tyler*, 236 Ga. App. at 852 (1) (testimony of plaintiff and his expert, photographs, and letter from railroad company that controlled adjacent track would authorize jury to find that development of subdivision had increased flow of surface water and sediment onto plaintiffs' property); *DeKalb v. McFarland*, 231 Ga. 649, 653 (2) (g) (203 SE2d 495) (1974) (no error to allow plaintiff to give his opinion as to whether the flow of water to his property has increased during the time he had owned the property); *but see Bord*, 335 Ga. App. at 23 (1) n.6 (*citing Newton's Crest* but declining to consider, given sufficiency of expert testimony, whether plaintiffs' personal observations standing alone are sufficient to raise issue of causation).[1] The

---

[1] The County cites *City of Atlanta v. Demita*, 329 Ga. App. 33, 37-38 (1) (762 SE2d 436) (2014) (physical precedent only) for the premise that a nuisance action based solely on a municipality's maintenance of a street off which water flows will not lie. However, in that decision we distinguished situations in which a defendant's conduct in maintaining a street "diverted or changed the flow of water so that it flooded adjacent property[,]" *Demita*, 329 Ga. App. at 38 (1), which is the sort of conduct alleged by the Strouds here.

8

trial court erred in finding that the Strouds had pointed to insufficient evidence of causation to withstand the County's motion for summary judgment.

2. The Strouds also argue that the trial court erred in ruling that their failure to prove damages meant the County was entitled to summary judgment. We agree with the Strouds on this point, as well.

The trial court faulted the Strouds' evidence of damages as reliant on hearsay and Don Stroud's unsupported opinion. However, a plaintiff's failure to produce probative evidence of a specific amount of damages is not a viable basis for summary judgment. *See Tyler*, 236 Ga. App. at 852-53 (1). Rather, "[t]he law infers some damage from the invasion of a property right; and if no evidence is given of any particular amount of loss, it declares the right by awarding what it terms 'nominal damages.'" *Id.* at 853 (1) (footnote and punctuation omitted). In another case alleging excessive water discharge, we found that the trial court had erred in granting summary judgment to developers on the plaintiffs' nuisance, trespass, and negligence counts, notwithstanding the plaintiffs' apparent failure to have presented a calculation of damages. *Id.* at 852-53 (1).[2]

---

[2] The trial court relied on *Martha K. Wayt Trust v. City of Cumming*, 306 Ga. App. 790 (702 SE2d 915) (2010), for the proposition that a witness' opinion as to value must show that the opinion is not merely the recitation of another's opinion.

Here, any deficiencies in the evidence offered by the Strouds as to the measure of their damages is not a basis for summary judgment. Although of course some sort of injury is an element of a nuisance claim, the law will infer such an injury to the extent that the Strouds prove their property rights have been invaded. Moreover, the Strouds testified to specific injuries: erosion and deposits of mud, compromised trees and vegetation, and inability to use a portion of the Property. The trial court therefore erred by granting summary judgment on this alternative ground.

3. The Strouds also argue that the trial court erred in granting summary judgment on the ground that their claim is barred by the statute of limitations. To the extent that the Strouds' claim is based on the County's maintenance of the Road causing flooding on the Property, we agree.

Under OCGA § 9-3-30(a), "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." The accrual of a nuisance action depends on whether the alleged nuisance is classified as permanent or continuing. *See City of Atlanta v. Kleber*, 285 Ga. 413, 416-17 (1) (677 SE2d 134)

---

But that decision, which involved an appeal of a judgment entered on a jury verdict, does not mandate summary judgment. *Id.* at 790. As explained above, a plaintiff's failure to produce evidence of a specific amount of damages is not a viable basis for summary judgment

(2009). A permanent nuisance is one in which "the destruction or damage [is] at once complete upon the completion of the act by which the nuisance is created[.]" *Id.* at 416 (1) (citation omitted). A permanent nuisance creates only one right of action, "which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run." *Id.* (citation omitted). A continuing nuisance, on the other hand, "is one which can and should be abated by the person erecting or maintaining it," and "every continuance of [such a] nuisance is a fresh nuisance for which a fresh action will lie." *Id.* (citation omitted). "[T]he statute of limitation will begin to run at the time of each continuance of the harm." *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333 (2) (711 SE2d 641) (2011). If a nuisance is not abatable, it is considered permanent; if it can and should be abated, it is not permanent. *See id.* If a nuisance is created "by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation" of some infrastructure employed in necessary public service, "then it will usually not be abatable by injunction[.]" *Id.* at 334 (2) (*quoting* Restatement (Second) of Torts § 930, cmt. c) (emphasis omitted).

In cases involving flooding, Georgia courts have characterized claims based on the mere presence or installation of some fixed object, such as a pipe or culvert,

11

as claims of a permanent nuisance. *See Kleber*, 285 Ga. at 416-17 (1); *City of Columbus v. Cielinski*, 319 Ga. App. 289, 292 (1) (734 SE2d 922) (2012). However, they have characterized allegations that improper maintenance of such a drainage system cause flooding as claims of a continuing nuisance. *See Kleber*, 285 Ga. at 417 (1); *City of Columbus*, 319 Ga. App. at 292 (1). Similarly, when a plaintiff alleged that a developer's grading of an adjacent property caused water and dirt to flow onto the plaintiff's property during rainstorms, our Supreme Court held that the allegation was one of a continuing nuisance. *See Shaheen v. G & G Corp.*, 230 Ga. 646, 648 (2) (198 SE2d 853) (1973).

Applying these principles, to the extent that the Strouds are alleging that the existence of the Road itself is responsible for the flooding on the Property, their claims are of a permanent nuisance and are barred by the statute of limitations.[3] On the other hand, to the extent that the Strouds' nuisance claim is based on harm caused by the County's maintenance of the Road, it is a claim of a continuing nuisance that

---

[3] In the Strouds' appellate briefing, they insist that the ponding is caused by the County's "continuing improper maintenance of the Road." Indeed, the Road was installed by a private entity, not the County. But in arguing that the nuisance is abatable and therefore continuing, the Strouds have pointed to four measures proposed by the County's engineering personnel. None of these proposed remedies involved a change to how the Road is maintained.

12

is not barred by the statute of limitations. Like the claim over the maintenance of the drainage system in *Kleber*, a claim that periodic installation of new gravel with inadequate scraping has caused a nuisance would fall under the category of a continuing nuisance, at least to the extent that it could be abated by changes to the County's maintenance practices or schedule. The trial court erred by granting complete summary judgment on that claim.[4] The Strouds may press that claim to the extent it is based on the County's "maintenance of [the Road] within the four years

---

[4] The trial court concluded that the nuisance alleged by the Strouds was a permanent one, then went on to find that the claim was barred by the statute of limitations because any increased ponding on the Property was not a new harm, but a change in degree of harm. "A claim for a permanent nuisance is not barred if 'some new harm that was not previously observable occurred within the four years preceding the filing of their cause of action.'" *Liberty Cty. v. Eller*, 327 Ga. App. 770, 773-74 (2) (761 SEd2d 164) (2014) (*quoting Forrister*, 289 Ga. at 336 (3)). To the extent that the Strouds' claim is that of a continuing nuisance, the consideration of whether the Strouds have experienced a "new harm" was misplaced. *See Forrister*, 289 Ga. at 335-36 (2)-(3) (considering argument of new harm only after determining that the nuisance complained of was a permanent one); *Eller*, 327 Ga. App. at 773-74 (2) (same). However, to the extent that the Strouds' claim is that the Road itself creates a nuisance, it is a claim of a permanent nuisance, and the trial court was surely correct that increased flooding was not a new harm, but a change in degree of harm. An adverse change in the nature of harm experienced by a plaintiff – such as new types of noises or vibrations coming from a power plant – can constitute a new harm. *See Forrister*, 289 Ga. at 336 (3). But the nature of the alleged harm experienced by the Strouds –flooding on the Property – has remained the same over time.

13

preceding their lawsuit." *Kleber*, 285 Ga. 417 (1).[5] To the extent that the Strouds'

claim is based on harm experienced prior to that period, or harm caused by the

existence of the Road itself, we affirm the grant of summary judgment to the County.

4. The Strouds also argue that the trial court erred by neglecting to address its

inverse condemnation claim to the extent that it was based on a trespass theory, as

opposed to nuisance. The Strouds say that their trespass claim is premised on both

flooding caused by the County's maintenance of the Road, as well as the County's

removal of shrubbery and ground cover as part of that maintenance. Indeed, the trial

court did not address the Strouds' trespass theory separately in its order.

With respect to the Strouds' trespass claims based on flooding, the County

clearly argued in its motion for summary judgment that the statute of limitations had

run on any claim based on the theory that the County had created ponding on the

Strouds' property. As noted above, a four-year statute of limitations governs trespass

claims. *See* OCGA § 9-3-30(a). Our Supreme Court has treated claims of nuisance

---

[5] It may be difficult to distinguish damages caused by the existence of the Road itself from damages caused by maintenance of the Road. However, we need not address that question at this stage. *See, e.g.*, *DeKalb Cty. v. Orwig*, 261 Ga. 137, 139 (3) (402 SE2d 513) (1991) (because lack of notice prevented county defendant from incurring liability for first instance of sewage backing up into plaintiff's home, trial court must instruct jury on retrial that the damages for which the county is liable, if any, are only those damages arising from a second overflow).

and trespass based on water incursion as synonymous. *See Brand v. Montega Corp.*, 233 Ga. 32, 33 (1) (209 SE2d 581) (1974) ("In a surface-water invasion case, the continuing invasions amount to a continuing trespass which is the equivalent of a continuing nuisance."). And in the ground water contamination context, we have applied the same analysis in determining whether a claim for continuing trespass or continuing nuisance was time-barred. *See Tri-County Inv. Grp. v. S. States, Inc.*, 231 Ga. App. 632, 635-36 (1) (500 SE2d 22) (1998). Therefore, although the trial court erred in granting summary judgment to the County on the Strouds' inverse condemnation claims to the extent they were based on evidence that County maintenance of the Road caused flooding, the trial court cannot be said to have committed a separate error in failing to address that claim separately under a trespass theory.

The Strouds also press a trespass claim based on the County's removal of ground cover from the Property during its maintenance of the Road. In his deposition, Don Stroud testified that on one occasion the County used a "bush hog" that destroyed an area of ground cover on the Property. After the County moved for summary judgment, Don Stroud submitted his affidavit, based on which the Strouds claim that the County destroyed ground cover on the Property on multiple occasions.

15

The County argues that there is no evidence of any destruction of ground cover other than one alleged bush hogging incident.

The County argued before the trial court, and argues now on appeal, that a claim based on this single incident fails because (1) it does not rise to the level of the kind of repetitive or continuous act that is necessary to press a claim against the County and (2) it is barred by the applicable ante litem notice statute. But reading Don Stroud's affidavit in the light most favorable to the Strouds, as we must, there is evidence of multiple incidents of ground cover removal by the County.[6] Don Stroud testified in his affidavit that "[a]s part of its maintenance, the County has scraped and bush hogged portions of [the] Property, which has resulted in the damaging, taking and killing of certain vegetation[.]" Although Don Stroud in his affidavit goes on to say that a certain bush hogging incident occurred in July 2012, he does not say that this was the only time the County's maintenance activities destroyed his vegetation.

---

[6] The County argues that, to the extent that the affidavit can be read in this way, the trial court was free to disregard it because it conflicted with Don Stroud's deposition testimony that the County's bush hogging destroyed an area of ground cover on the Property only once. Under *Prophecy v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), a party's self-contradictory testimony will be construed against him unless the party offers a reasonable explanation for the contradiction. *Id.* at 28-30 (1). However, affidavit testimony that the County's scraping activities destroyed vegetation on the Property on multiple occasions would not contradict Don Stroud's deposition testimony that a *bush hog* destroyed vegetation only once.

16

Given that the Strouds have presented evidence that the County's maintenance activities destroyed vegetation on the Property on multiple occasions, the County's arguments premised on the notion that there is evidence of only one such occasion are unavailing. By granting summary judgment based on the Strouds' claims over these alleged incidents, the trial court erred.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur.*