**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 4, 2019**

# In the Court of Appeals of Georgia

A18A1983. HAYMAN et al. v. PAULDING COUNTY.                    DO-073

DOYLE, Presiding Judge.

Bill Hayman, Wendy Hayman, and Elana[1] Mor sued Paulding County for inverse condemnation following flooding of their property and water intrusion into their home. In the second appearance of this case before this Court, the plaintiffs appeal the trial court's grant of summary judgment to the County, arguing that the trial court erred (1) by failing to consider their supplemental brief filed following remand; (2) by finding that there was no evidence that the County maintained a nuisance; (3) by finding that flooding in September 2009 was the result of a 500-year flood event caused by an act of God; (4) by finding that the 2009 flooding was a one-

---

[1] Mor's first name is spelled as both "Elana" and "Ilana" in the record.

time event and not a repetitious condition; and (5) by granting summary judgment on their claim for attorney fees. For the reasons that follow, we reverse.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[2]

So viewed, the record shows that in 1987, Mor built a home on property in Paulding County ("the Property"). Poplar Springs Road bounds the Property to the south. Mor's residence, which is "L" shaped, sits on the eastern half of the Property. Rakestraw Creek ("the creek") runs under the western portion of the Property. Where it intersects with Poplar Springs Road, the creek flows through four adjacent ten-by-ten foot concrete box culverts that run under the road.[3] There is also a small drainage

---

[2] (Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

[3] The culverts have been in place since at least 1993.

ditch that runs along Poplar Springs Road on their side of the street and empties drainage water into the creek.

At some point in or around 2005 or 2006, in response to a state bridge report identifying debris in the culverts, the County cleared debris from the culverts, which were impacted with sand; the process required the use of a skid-steer loader, shovels, rakes, and dump trucks to clear and haul off the sediment.[4] There is no evidence that the County cleaned out the culverts at any other time.

In 2003, the Haymans (Mor's daughter and son-in-law) moved into Mor's home,[5] and within six months, they noticed water intrusion into their son's bedroom and into the kitchen on multiple occasions.[6] During heavy rains, water flowed over the drainage ditch and onto their property; according to Bill, the "significant amount of rain [was] more than [the] culvert[s] can handle, and it flows over our driveway." According to Wendy, although water flowed through the drainage ditch "years ago,"

---

[4] According to Bill, during the one instance in which the County cleaned the culverts, it did not remove all of the sediment and debris.

[5] The Haymans are not listed on the deed to the house, but Wendy is listed on the mortgage.

[6] The son's bedroom was located in the basement on the front of the house, facing Poplar Springs Road.

the ditch is filled with debris and dirt and water no longer runs through it. During rain events, the water from the drainage ditch combines with other storm water, and then "hits the house." The flooding in the son's room was "from the water that was coming from the front of the house, from the roadside," and additional water that pooled in their backyard would also enter the house. The plaintiffs called the County more than a dozen times complaining of the storm water runoff and flooding, but the problem was never resolved. The Haymans took multiple measures in an attempt to prevent the water from entering the house, including cleaning out the culverts and sealing the walls, but the flooding into the house continued.

In September 2009, a major rain event caused substantial flooding at the plaintiffs' home, at least a portion of it coming from the creek. Water marks inside the house show that the flooding exceeded two feet in the living room and bedroom. Thereafter, Bill performed extensive work on the property to alleviate the flooding, including excavation, installing French drains, installing 40 to 50 truckloads of dirt to raise the ground level of the yard, cleaning out the ditch, and connecting the driveway ditch to a gravel ditch. As of the time of Bill and Wendy's November 2013 depositions, there had been no additional water intrusions since the 2009 flooding, but the backyard still flooded and could get muddy.

4

On December 11, 2012, the plaintiffs filed suit against the County for inverse condemnation and attorney fees under OCGA § 13-6-11, alleging that the County created a continuing nuisance, trespass, and inverse condemnation by failing to maintain and repair its storm water drainage systems. The County moved for summary judgment, and the trial court granted the motion on May 3, 2016. The plaintiffs appealed, and this Court vacated the grant of summary judgment and remanded the case for reconsideration of the County's motion after "giving consideration to the deposition of the [plaintiffs'] experts."[7]

On remand, on March 5, 2018, the plaintiffs filed in the trial court a supplemental brief in opposition to the County's summary judgment motion. On April 12, 2018, the trial court entered an order granting summary judgment to the County.[8] The trial court again found that the plaintiffs could not attribute the seepage of water into the basement "to any specific cause other than the rain," and

---

[7] See *Hayman v. Paulding County*, Case No. A17A1759 (decided Feb. 1, 2018) (unpublished).

[8] The trial court noted in its order that it did not consider the plaintiffs' March 2018 supplemental brief because "the direction of the Court of Appeals was for [the trial c]ourt to reconsider its ruling with the benefit of the deposition testimony of [the plaintiffs' experts]."

the undisputed record indicates that the larger flooding of Rakestraw Creek in September 2009 was the result of a 500-year event[,] which was an act of God, not Paulding County. . . . [T]his flood was a one-time event, not a continuous or regularly repeated condition necessary to create a continuing nuisance for which a county can be liable in inverse condemnation.

This appeal followed.

1. The plaintiffs contend that the trial court erred by granting summary judgment to the County on their claim for inverse condemnation. We agree.

In Georgia, "count[ies are] not . . . generally liable for creating nuisances."[9] Rather,

counties . . . can be liable for conditions created on private property only under the constitutional eminent domain provisions against taking or damaging such property for public purposes without just and adequate compensation, which provisions function as a waiver of sovereign immunity. A county may be liable for damages if it creates a condition on private property, such as a nuisance, that amounts to inverse condemnation or a taking without compensation. Regardless of how the various claims are denominated, therefore, the plaintiffs may recover if

---

[9] *Duffield v. DeKalb County*, 242 Ga. 432, 434 (2) (249 SE2d 235) (1978).

and only if the trespass or nuisance amounted to the taking of property without just compensation.[10]

"A nuisance is anything that causes hurt, inconvenience, or damage to another[,] and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance."[11] The Supreme Court of Georgia has described the following actions by a county as an actionable nuisance: "performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the [plaintiff] hurt, inconvenience, or injury."[12]

This Court has held that "a single malfunction in the operation of the public works project," "a single isolated occurrence," is not an actionable nuisance.[13] In *DeKalb County v. Orwig*,[14] the plaintiff, who sustained damages from two instances

---

[10] (Citations and punctuation omitted.) *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006), citing *DeKalb County v. Orwig*, 261 Ga. 137, 138 (1) (402 SE2d 513) (1991).

[11] OCGA § 41-1-1.

[12] (Punctuation omitted.) *Orwig*, 261 Ga. at 139 (2), quoting *Mayor of Savannah v. Palmerio*, 242 Ga. 419, 426 (3) (i) (249 SE2d 224) (1978) (addressing municipal liability).

[13] *Desprint Svcs. v. DeKalb County*, 188 Ga. App. 218, 220 (2) (372 SE2d 488) (1988).

[14] 261 Ga. at 137.

of sewage backing up into her home caused by an obstruction placed in the sewer line by Georgia Power, sued DeKalb County for inverse condemnation arising from its actions in maintaining the sewer line with an obstruction.[15] This Court affirmed the trial court's denial of a directed verdict to the county on that claim, holding:

> The condition involved here, maintaining a sewer line with an obstruction, was continuous from the time Georgia Power first damaged the sewer line until it was repaired by [the c]ounty. [Because] there was some evidence in the record to support a finding that [the c]ounty knew or should have known after the first overflow that the obstruction was in its line, there is a question of fact whether the county was responsible for the second overflow and, thereby, for maintaining a nuisance amounting to a taking of [the plaintiff's] property.[16]

Here, the trial court found that "there is no evidence that the County . . . caused, created[,] or maintained any nuisance that caused the occasional seepage of rainwater into [the p]laintiffs' basement," concluding that the September 2009 rain event was an act of God resulting in a 500-year flood and that the plaintiffs failed to "attribute any specific source other than the rain" for the periodic seepage of water into the

_____

[15] See id.

[16] Id. at 139 (2).

basement that occurred when it rained. This conclusion overlooks the testimony of the plaintiffs and the plaintiffs' experts.

(a) *September 2009 rain event.*

The trial court accepted the County's expert opinion and concluded that the September 2009 rain event resulted in a 500-year flood. In doing so, the court ignored the testimony of the plaintiffs' experts.

Pam Knox, a certified consultant meteorologist, used radar calibrations to conclude that approximately 7 inches of rainfall occurred at the plaintiffs' home during the 24-hour period between September 21, 2009, and September 22, 2009, which amount is equivalent to a 50-year flood. Elvin Aycock, a professional engineer, hydrologist, and land surveyor who investigated the property and surrounding area, concluded that the four box culverts were designed to handle a 100-year flood event, provided that they were completely clear of debris and sediment, and they should have been able to handle the 50-year storm event of September 2009 had they been maintained properly. Aycock further opined that the County's failure to clean out the culverts in the years prior to September 2009 resulted in large amounts of sand and silt in the culverts at that time, which was a major cause of the flooding of the

9

plaintiffs' home and property. This testimony is sufficient to create a question of fact regarding the cause of the September 2009 flooding of the plaintiffs' property.[17]

Furthermore, the trial court's conclusion that the September 2009 flooding was an act of God requiring summary judgment to the County was erroneous. OCGA § 1-3-3 (3) defines an "[a]ct of God" as "an accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death, or illness. This expression *excludes all idea of human agency*."[18] Given the testimony of the plaintiffs' experts that the County's failure to maintain the culverts contributed to the flooding of the plaintiffs' home in

---

[17] The County did not challenge the qualifications, methods, or reliability of the plaintiffs' experts by filing motions under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993). See also OCGA § 24-7-702. Its arguments on summary judgment regarding the credibility of and methodology used by the plaintiffs' experts are irrelevant. See *Toyo Tire North America Mfg. v. Davis*, 299 Ga. 155, 162 (2) (787 SE2d 171) (2016) ("If a defendant moves for summary judgment and points to the favorable testimony of a dozen winners of the Nobel Prize for Medicine, but the plaintiff responds with the admissible testimony of a barely qualified medical expert, the trial court must assume . . . that the jury will believe the plaintiff's expert and disbelieve the expert array offered by the defendant.") (punctuation omitted), quoting *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (779 SE2d 334) (2015); *Capital Color Printing, Inc. v. Ahern*, 291 Ga. App. 101, 111 (2) (661 SE2d 578) (2008) ("'In motions for summary judgment, this [C]ourt cannot consider the credibility of witnesses or their affidavits[,] and a jury must resolve the question and the conflicts in the evidence which it produces.'").

[18] (Emphasis supplied.)

September 2009, the trial court erred by granting summary judgment to the County based on an act of God defense.[19]

(b) *Other instances of flooding*.

Notwithstanding the flooding resulting from the September 2009 rain event, the plaintiffs testified that on multiple occasions, their property and home were flooded by storm water either overflowing the clogged front ditch or overflowing the creek around the clogged culverts, and they complained about the flooding to the County more than a dozen times.

This Court has "repeatedly . . . held that a lay witness' personal observations about water flow are probative of causation issues in a nuisance case."[20] Thus, the plaintiffs' testimony is sufficient to create a genuine issue of material fact as to

---

[19] See, e.g., *Lewis v. Smith*, 238 Ga. App. 6, 6-7 (517 SE2d 538) (1999) (explaining in an automobile accident case that "to establish an act of God defense based on illness producing a loss of consciousness, the driver must show that the loss of consciousness produced the accident without any contributing negligence on the part of the driver"); *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189, 191 (1) (210 SE2d 337) (1974) ("'the fact that the accumulation of the ice here was an act of God does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action'"); *Jackson v. Co-Op Cab Co.*, 102 Ga. App. 688, 691 (1) (b) (117 SE2d 627) (1960).

[20] (Punctuation omitted.) *Stroud v. Hall County*, 339 Ga. App. 37, 40-41 (1) (793 SE2d 104) (2016) (collecting cases).

whether the County's failure to maintain the storm water system in that area caused the repeated flooding at the plaintiffs' home, notwithstanding any opinions to the contrary by the County's experts.[21]

2. The plaintiffs also argue that the trial court erred by granting summary judgment to the County on their claim for attorney fees under OCGA § 13-6-11. Again, we agree.

> OCGA § 13-6-11
>
> authorizes an attorney fee award even when nominal damages are recovered. And every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees. Moreover, generally the question of bad faith is for the jury, to be determined from its consideration of the facts and circumstances in the case.[22]

---

[21] See *Orwig*, 261 Ga. at 139 (2) (evidence of two instances of flooding are sufficient to raise a jury question on nuisance because the county was made aware of a maintenance issue and failed to rectify it), citing *Fulton County v. Wheaton*, 252 Ga. 49, 50 (1) (310 SE2d 910) (1984) (affirming the grant of a directed verdict to the plaintiff as to the defendant county's liability for creating a nuisance by failing to properly maintain a culvert containing accumulated debris, resulting in flooding on the plaintiff's property); *Stroud*, 339 Ga. App. at 41 (1).

[22] (Citations and punctuation omitted.) *Tyler v. Lincoln*, 272 Ga. 118, 121-122 (2) (527 SE2d 180) (2000).

Based on our holding in Division 1 reversing the grant of summary judgment to the County as to the plaintiffs' claim for inverse condemnation, we also reverse the grant of summary judgment as to their claim for attorney fees under OCGA § 13-6-11.[23]

3. In light of our holdings in Divisions 1 and 2, we need not address the plaintiffs' remaining enumerations of error.

*Judgment reversed. Dillard, C. J., and Mercier, J., concur.*

---

[23] See id. at 122 (2). See also *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 878 (4) (482 SE2d 498) (1997) (because summary judgment was not proper as to the plaintiffs' claim that the defendants committed an intentional tort, "'the claim for attorney fees rooted in bad faith concerning those actions should have also been left for the jury'"). We note that the Supreme Court of Georgia has "expressly held that a county is subject to a fee award under OCGA § 13-6-11[] and . . . that attorney fees under that statute may be recoverable in an inverse condemnation proceeding." *Pribeagu v. Gwinnett County*, 336 Ga. App. 753, 759-760 (3) (785 SE2d 567) (2016), citing *Forsyth County v. Martin*, 279 Ga. 215, 219 (2) (a) (610 SE2d 512) (2005) & *Dept. of Transp. v. Edwards*, 267 Ga. 733, 737 (1) (b) (482 SE2d 260) (1997).